ROBERT E. MARTIN, JR. *v.* TOWN OF WESTPORT
(AC 28524)

Flynn, C. J., and Lavine and Beach, Js.

Argued February 25—officially released July 1, 2008

*Ikechukwu Umeugo*, for the appellant (plaintiff).

*Michael J. Rose*, with whom were *Adrienne R. DeLucca*, and, on the brief, *Johanna G. Zelman*, for the appellee (defendant).

*Opinion*

LAVINE, J. This appeal concerns the trial court's granting of a motion for summary judgment filed by the defendant, the town of Westport, in an action in which the plaintiff, Robert E. Martin, Jr., alleged that the defendant discriminated against him in violation of General Statutes § 31-290a.[1] Specifically, the plaintiff alleges that the defendant improperly terminated his employment after he was injured during the course of his employment and filed a workers' compensation claim and that the defendant's agents or employees intentionally and negligently inflicted emotional distress on him. On appeal, the plaintiff claims that in granting the motion for summary judgment, the court improperly (1) weighed the evidence as to his allegations under § 31-290a, rather than limiting its decision to whether there were genuine issues of material fact, and (2) determined that governmental immunity barred his emotional distress claims. We affirm the judgment of the trial court.

The plaintiff commenced his three count action in December, 2004. In count one, the plaintiff alleged that the defendant, through its agents and employees, violated § 31-290a by discriminating against him on the

[1] General Statutes § 31-290a, entitled "Discharge or discrimination prohibited. Right of action," provides in relevant part: "(a) No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter."

basis of his work-related injury. In count two, the plaintiff alleged that the defendant, through its agents and employees, discriminated against him because he filed a claim for workers' compensation benefits pursuant to § 31-290a.[2] In count three, the plaintiff alleged that the conduct of the defendant's agents and employees was extreme and outrageous and resulted in negligent and intentional infliction of emotional distress. In response, the defendant alleged several special defenses as to each count.

The plaintiff's claims are predicated on the following facts as alleged in his complaint. The defendant employed the plaintiff as a mechanic in 1984 and later, for fourteen years, as a master mechanic. The plaintiff was the only African-American male employed by the defendant as a master mechanic in the defendant's department of public works. The complaint also alleged that the defendant is a municipal corporation that regularly employs more than fifteen persons. At all times relevant, Stephen J. Edwards was the director of public works.

On March 18, 2002, the plaintiff injured his back in the course of his employment and sought treatment for his injury. The plaintiff's treating physicians, Anthony LaMarca and Nicholas Polifroni, orthopedic surgeons, placed the plaintiff on light duty from 2003 until August, 2004. On April 8, 2003, Polifroni opined that the plaintiff had a 5 percent permanent partial disability of his back

---

[2] The court noted that in count one, the plaintiff alleged that the defendant discriminated against him in violation of § 31-290a because he sustained a work-related injury. In count two, the plaintiff alleged that the defendant discriminated against him in violation of § 31-290a because he filed a claim for workers' compensation benefits. Because the plaintiff failed to demonstrate how the allegations of count one and count two were different, the court analyzed the claims together. The plaintiff has not challenged the court's decision on that basis. We likewise will consider the allegations in counts one and two together.

and that he had reached maximum medical improvement. The complaint further alleged that the defendant began to mistreat him and place certain conditions on him on the basis of his March 18, 2002 work-related injury. The plaintiff returned to work several times, and the defendant sent him home, despite the plaintiff's having obtained a physician's permission to work. Edwards refused to let the plaintiff perform light duty assignments as permitted by his treating physician.

The plaintiff also alleged that on April 8, 2003, he was able to return to his employment without any restrictions. He alleged that due to his disability or work-related injury, the defendant deprived him of certain privileges that were available to his colleagues, such as permitting him to work with his disability or work-related injury. The plaintiff alleged that he complained about the discriminatory practices of his colleagues but that the defendant did nothing to remedy the situation and violated the duty it owed the plaintiff.

On August 10, 2004, the defendant informed the plaintiff that it had awarded him a disability pension, as the result of his March 18, 2002 back injury, effective September 1, 2004. According to the plaintiff, the defendant's actions against him were extreme and outrageous and created an unreasonable risk of causing him emotional distress. Moreover, the plaintiff alleged that the defendant intended, knew or recklessly disregarded the fact that its extreme and outrageous conduct caused the plaintiff to suffer mental, physical and emotional harm, as well as injury to his self-esteem and sense of self-worth.

The plaintiff alleged that as a direct and proximate result of the defendant's acts and those of its agents and employees, he suffered injury to his physical health, good reputation, humiliation, anguish, embarrassment, mortification, outrage, lost wages and work benefits,

such as vacation, sick and personal time, salary increases and pension benefits. The plaintiff alleged that the defendant's acts were oppressive and malicious, entitling him to an award of punitive damages.

In March, 2006, the defendant filed a motion for summary judgment. In its motion, the defendant claimed that there were no genuine issues of material fact and that it was entitled to summary judgment on the grounds that (1) there was no causal connection between the plaintiff's exercising his right to workers' compensation benefits and his receiving a disability pension, (2) the defendant was entitled to governmental immunity for claims of intentional infliction of emotional distress and (3) the plaintiff's claim for negligent infliction of emotional distress failed because the plaintiff's employment was not terminated because he was awarded a disability pension. The defendant supported its motion for summary judgment with copies of medical records from the plaintiff's treating physicians, medical reports issued pursuant to three independent medical examinations, deposition testimony and an affidavit from Edwards and Scott Sullivan, the defendant's highway superintendent.

The plaintiff objected to the motion for summary judgment, arguing that (1) the defendant's awarding him a disability pension violated § 31-290a because it was based on his back injury of March 18, 2002, (2) the defendant assigned him tasks that aggravated his injury, (3) he returned to work capable of doing his job, but the defendant refused to let him do so, (4) the awarding of his disability pension was a case of retaliatory discharge, (5) other employees who sustained injuries were treated differently, and (6) the defendant's conduct was extreme and outrageous. The plaintiff attached his affidavit, some medical records and correspondence to his objection. The defendant responded to the plaintiff's objection in a memorandum of law,

arguing that the evidence produced by the plaintiff constituted legal conclusions and did not raise genuine issues of material fact.

The court granted the motion for summary judgment in a memorandum of decision on January 17, 2007, and rendered judgment thereon. With respect to the first two counts of the complaint alleging discrimination on the basis of the plaintiff's injury and workers' compensation claim, the court found that there was no dispute that the plaintiff had engaged in a protected activity and that the defendant's awarding the plaintiff a disability pension terminated his employment. The court also concluded that the plaintiff failed to present any facts that created a genuine issue of material fact as to the causal relationship between his injury and workers' compensation claim and the defendant's awarding him a disability pension. The plaintiff failed to offer any evidence that the defendant had awarded him a disability pension for any reason other than that it could no longer afford to pay him for work he could not perform. Although the plaintiff claimed that the defendant treated him differently from other employees who had suffered work-related injuries, he failed to provide any evidence to substantiate his claim. The court therefore concluded that there were no genuine issues of material fact as to counts one and two and that the defendant was entitled to summary judgment.

As to the allegations of count three, the court concluded, citing *Pane* v. *Danbury*, 267 Conn. 669, 684–86, 841 A.2d 684 (2004), that the defendant was immune from liability for the alleged intentional infliction of emotional distress by its employees. As to the plaintiff's claims of negligent infliction of emotional distress, the court concluded that a municipality cannot be sued directly for common-law negligence and that the plaintiff failed to allege any statute that would abrogate the common law. The defendant, therefore, was entitled to

summary judgment. The court granted the defendant's motion for summary judgment, and this appeal followed.

This court's review of a trial court's granting of a motion for summary judgment is plenary in nature. See *Reardon* v. *Windswept Farm, LLC*, 280 Conn. 153, 158, 905 A.2d 1156 (2006). Our task is to determine "whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Pepitone* v. *Serman*, 69 Conn. App. 614, 618, 794 A.2d 1136 (2002). "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing . . . that the party is . . . entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Kinney* v. *State*, 285 Conn. 700, 709, 941 A.2d 907 (2008). "The test is whether the party moving for summary judgment would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Reardon* v. *Windswept Farm, LLC*, supra, 158.

I

The plaintiff claims that the court improperly granted the defendant's motion for summary judgment as to his § 31-290a claims because the court weighed the evidence rather than deciding whether there were genuine issues of material fact. We disagree. Our review of the record discloses that the court, in its memorandum of decision, did not weigh the evidence but distinguished

the character and quality of the alleged evidence produced by the parties.

"Claims of employment discrimination are evaluated under the burden shifting analysis set forth in *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 53–54, 578 A.2d 1054 (1990). . . . Section 31-290a (a) prohibits an employer from discharging or otherwise discriminating against an employee because the employee had filed a claim for workers' compensation benefits or otherwise exercised her rights under the act. . . . The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. . . . In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. . . . If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. . . . If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy her burden of persuading the factfinder that she was the victim of discrimination either directly by persuading the [factfinder] . . . that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Citations omitted; internal quotation marks omitted.) *Moran* v. *Media News Group, Inc.*, 100 Conn. App. 485, 493–94, 918 A.2d 921 (2007).

"To establish a prima facie case of discrimination under § 31-290a, the plaintiff must show that she was exercising a right afforded her under the [Workers' Compensation Act (act), General Statutes § 31-275 et seq.] and that the defendant discriminated against her for exercising that right. . . . [T]he plaintiff must show

a casual connection between exercising her rights under the act and the alleged discrimination she suffered. Implicit in this requirement is a showing that the defendant knew or was otherwise aware that the plaintiff had exercised her rights under the act. . . . [T]o establish [a] prima facie case of discrimination, the plaintiff must first present sufficient evidence . . . that is, evidence sufficient to permit a rational trier of fact to find [1] that she engaged in protected [activity] . . . [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action . . . ." (Citations omitted; internal quotation marks omitted.) *Moran* v. *Media News Group, Inc.*, supra, 100 Conn. App. 494–95.

Here, the court determined that there was no genuine issue of material fact that the plaintiff had alleged a prima facie case of discrimination. The parties agree that the plaintiff had engaged in a protected activity by filing a claim for workers' compensation benefits for his March 18, 2002 injury and that the defendant was aware of it. The court also determined, as a matter of law, that there was no dispute that the plaintiff suffered a materially adverse change in the terms and conditions of his employment. See *Sanders* v. *New York City Human Resources Administration*, 361 F.3d 749, 755 (2d Cir. 2004) ("adverse employment action [is defined] as a materially adverse change in the terms and conditions of employment. . . . To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. . . . Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly

diminished material responsibilities, or other indices . . . unique to a particular situation." [Citations omitted; internal quotation marks omitted.]).[3] There is no dispute that the plaintiff made out a prima facie case. The court's decision to grant the motion for summary judgment turned on its conclusion that there were no genuine issues of material fact that a causal connection between the plaintiff's exercising his right to workers' compensation benefits and his disability pension did not exist. That decision concerns the third step of the *Ford* analysis.

"A causal connection may be established either *indirectly* by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or *directly* through evidence of retaliatory animus directed against a plaintiff by a defendant." (Emphasis in original; internal quotation marks omitted.) *Johnson* v. *Palma*, 931 F.2d 203, 207 (2d Cir. 1991).

In an effort to overcome the inference of discrimination implied by the awarding of the disability pension, the defendant presented evidence that more than two years after the March 18, 2002 work-related injury, the plaintiff still was unable to perform the duties of a master mechanic without restrictions. During that period of time, the defendant provided the plaintiff with

---

[3] In its memorandum of law in support of its motion for summary judgment, the defendant maintained that it had not terminated the plaintiff's employment. There was no factual dispute, however, that the defendant had awarded the plaintiff a disability pension. "Section 31-290a (a) contains no requirement that any particular word be used in the process of terminating an employee's employment. Any words or conduct that an employee would reasonably understand to signify that his employment was terminated are sufficient." *Loftus* v. *Vincent*, 49 Conn. App. 66, 69, 713 A.2d 892 (1998). The court concluded that the plaintiff reasonably could have understood that his employment had been terminated. On appeal, the defendant does not challenge the court's legal conclusion.

light duty assignments, and the plaintiff continued to receive workers' compensation benefits. After two years, however, the defendant could no longer justify the expense of continuing to pay the plaintiff for work that he could no longer perform.[4] The court ultimately concluded, after reciting the plaintiff's alleged claims of discrimination and the reasons given in his brief, that he had failed to raise any genuine issue of material fact that the defendant's reason for awarding him a disability pension was anything other than the one proffered by the defendant. To support its conclusion that the defendant had terminated the plaintiff's employment for a legitimate, nondiscriminatory reason, the court quoted this court's decision in *Kopacz* v. *Day Kimball Hospital of Windham County, Inc.*, 64 Conn. App. 263, 779 A.2d 862 (2001). Section "31-290a . . . does not require an employer to retain an employee unable to perform his or her work simply because that inability resulted from a work related injury or illness. . . . Businesses would suffer significant losses if they were prevented from filling employment vacancies after the lapse of a reasonable period of time." (Citations omitted; internal quotation marks omitted.) Id., 269.

On appeal, the plaintiff claims that there is a genuine issue of material fact as to whether there is a causal connection between the exercise of his right to workers' compensation benefits and the termination of his employment. To establish the necessary dispute as to material facts, the plaintiff suggested that (1) he was treated in a manner different from that of his coworkers,

---

[4] The defendant presented the court with the minutes of its public works pension board meeting of August 10, 2004, that stated in part that the defendant "initiated [the plaintiff's] disability retirement consideration based upon the determination by four (4) physicians that, as a result of his injuries, [the plaintiff] could not perform the duties of his position and would not be able to do so in the future. [The] applicable provision of the collective bargaining agreement with [the plaintiff's] union was Article IX Section 3. INJURY LEAVE UP TO MAXIMUM RECOVERY." The board approved "the disability retirement of [the plaintiff] to retire effective September 1, 2004 with a monthly retirement benefit of $2273.82 . . . ."

Dale Wehmhoff, Douglas Meyers and Joe Bottone, who are white and who were provided light duty assignments; (2) Edwards assigned him work and equipment that aggravated his shoulder injury; (3) the defendant failed to pay him for time he worked in August, 2002; (4) Edwards sent him home despite the plaintiff's having a note from his physician that he was able to work light duty; and (5) the defendant deprived him of certain privileges that were available to his coworkers, i.e., permitting him to work with his disability.[5]

"It is frequently stated in Connecticut's case law that, pursuant to Practice Book §§ 17-45 and 17-46, a party opposing a summary judgment motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . Moreover, [t]o establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. . . . Such assertions are insufficient regardless of whether they are contained in a complaint or a brief. . . . Further, unadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact." (Internal quotation marks omitted.) *McKinney* v. *Chapman*, 103 Conn. App. 446, 451, 929 A.2d 355, cert. denied, 284 Conn. 928, 934 A.2d 243 (2007). "Mere statements of legal conclusions . . . and bald assertions, without more, are insufficient to raise a genuine issue of material

---

[5] In his brief, the plaintiff does no more than claim that the defendant failed to pay him for time worked in August, 2002, Edwards sent him home when the plaintiff had a physician's note that he could work and the defendant deprived him of certain privileges. The plaintiff, however, has failed to provide any analysis of or evidence to support those claims. Without legal analysis with references to law, we deem the plaintiff's claims abandoned. See *Zbras* v. *St. Vincent's Medical Center*, 91 Conn. App. 289, 295, 880 A.2d 999, cert. denied, 276 Conn. 910, 886 A.2d 424 (2005).

fact capable of defeating summary judgment." (Citation omitted.) *Wadia Enterprises, Inc.* v. *Hirschfeld*, 27 Conn. App. 162, 170, 604 A.2d 1339, aff'd, 224 Conn. 240, 618 A.2d 506 (1992).

With regard to the plaintiff's assertion that he was treated differently from his white coworkers, the court found that he failed to provide details of the coworkers' duties, injuries or restrictions. The defendant, however, by means of an affidavit from Edwards, presented details of the several injuries that the plaintiff sustained during the course of his employment with the defendant[6] and those of Wehmhoff, Meyers and Bot-

---

[6] Edwards' affidavit set forth the following work-related injuries the plaintiff sustained:

"6. In 1985, [the plaintiff] sustained a shoulder injury; he required [ten] days to rehabilitate the injury;

"7. In 1987, [the plaintiff] injured his back; recovery from this back injury required two weeks;

"8. An injury to [the plaintiff's] shoulder on June 6, 1995 required extensive rehabilitation that did not result in a full return to work until February 1996;

"9. [The plaintiff] filed Workers' Compensation claims for all these injuries;

"10. On December 20, 1999, [the plaintiff] injured his wrist while working on a vehicle;

"11. On January 10, 2000 he returned to work under a light duty restriction but continued wrist pain forced him off the job on February 3, 2000;

"12. [The plaintiff] again underwent extensive therapy and was returned to work for four hours per day for a light duty assignment on August 15, 2000;

"13. [The plaintiff] continued to work half-day/light duty until December 21, 2000 when he was forced to discontinue even the light duty assignment due to excessive pain;

"14. [The plaintiff's] doctor issued a maximum medical improvement rating effective December 13, 2000;

"15. Based on this finding, Workers' Compensation issued a partial Permanent Disability for this wrist injury around this time;

"16. In mid-February 2001 when the Workers' Compensation payments were discontinued and the [defendant] discontinued salary to [the plaintiff], he returned to his doctor and was given a release for light duty assignment, [eight] hours per day;

"17. The [defendant] provided a [ten]-week light duty assignment until May 1, 2001. At this time, [the plaintiff's] treating physician still did not release him for an unrestricted assignment;

"18. The [defendant] requested that [the plaintiff] undergo three independent physical examinations to see if he could perform the essential functions of his position. These were completed during September 2001 and each identified [the plaintiff] fit for work. The [defendant] further sent [the plaintiff] for a Functional Capacity Examination, which also supported his return to full duty. [The plaintiff] returned to full duty with no restrictions on October 15, 2001;

"19. [The plaintiff] worked for five months and on March 21, 2002 injured his back while climbing down off of a sweeper;

tone.[7] Edwards attested that there "are nine more

"20. Again [the plaintiff] filed a claim for Workers' Compensation. After seven weeks of therapy and rehabilitation, [the plaintiff] was released for light duty assignments on May 6, 2002 but no light duty assignments were available with the [defendant] until August 21, 2002;

"21. [The plaintiff] reported to the light duty assignment on September 10, 2002 and on September 12, 2002 reported an aggravation of his prior 1985 shoulder and 2002 back injury and was released from work by his physician, Dr. LaMarca, with acute low back pain.

"22. [The plaintiff] was again cleared for light duty with restrictions on October 23, 2002 by Dr. Polifroni;

"23. The [defendant] had no light duty assignments until November 12, 2002;

"24. [The plaintiff] worked for the next two months (November 12, 2002 through January 28, 2003) on a light duty assignment;

"25. On January 28, 2003 [the plaintiff] returned to his physician, Dr. Polifroni, and was released from work until further reevaluation;

"26. On February 11, 2003, [the plaintiff] was again cleared for light duty but no light duty assignment was identified until February 25, 2003;

"27. For the next five weeks, [the plaintiff] performed his light duty assignments. On April 8, 2003, Dr. Polifroni returned [the plaintiff] to full duty;

"28. A little more than a month later (May 20, 2003), [the plaintiff] re-injured his shoulder and was released from work until further evaluation;

"29. On June 2, 2003, Dr. LaMarca cleared [the plaintiff] for a light duty assignment and the [defendant] found an assignment;

"30. On August 18, 2003 [the plaintiff] aggravated a prior injury and was not capable of work until he was reevaluated on September 29, 2003, at which time he was returned to a light duty assignment. A re-injury of his prior back and shoulder injuries while performing a light duty assignment on October 30, 2003 again required Dr. LaMarca to request that [the plaintiff] be given several days off due to the injury;

"31. On November 17, 2003 Dr. LaMarca again cleared [the plaintiff] for a light duty assignment;

"32. Based on the fact that [the plaintiff] had re-injured his back and shoulder a number of times while on light duty assignments, and the department had provided in excess of 175 days of light duty assignments for him over the past two years, the [defendant] could provide no further light duty assignments for [the plaintiff]. At that time, the [defendant] could not accommodate [the plaintiff's] requirement for a light duty assignment limited to office work within the garage;

"33. From November 17, 2003 through May 20, 2004, [the plaintiff] was on continued light duty from Dr. LaMarca. The [defendant] had no light duty assignments for [the plaintiff] during this time;

"34. [The plaintiff] continued to receive Workers' Compensation benefits during this time;

"35. I made the recommendation that [the plaintiff] be given a disability pension based on [the plaintiff's] prior two years of injuries. This recommendation was also based upon the doctor's reports I had at the time . . . ."

[7] In his affidavit, Edwards attested to the injuries of the plaintiff's coworkers. Bottone is an equipment operator who had knee surgery on March 27, 1997, as a result of a work-related injury. He was out of work for five weeks and returned without restrictions. Wehmhoff is an equipment operator who injured his knee on February 10, 1997, and underwent surgery for the same

employees in the building maintenance division . . . than . . . in the equipment division. . . . The different functions performed by maintenance or highway divisions provide greater opportunities for long-term, light duty assignments than in the [two]-person equipment maintenance division . . . ." The plaintiff presented no evidence to challenge the evidence presented in Edwards' affidavit. The court concluded that the plaintiff failed to carry his burden to demonstrate the existence of a genuine issue of material fact.

As to the allegation that Edwards once assigned him duties that aggravated his injury, in a deposition the plaintiff testified that he was referring to the shoulder and arm injury he sustained prior to his back injury. The court noted that this action arose from an injury to the plaintiff's back. The court also noted that the plaintiff had litigated the injuries related to his arm and shoulder in a federal civil rights action. See *Martin* v. *Westport*, 329 F. Sup. 2d 318 (D. Conn. 2004) (alleging claims arising under title VII of Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1983, Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and state statutory and common-law claims). During his deposition, the plaintiff could not recall when Edwards assigned him the tasks of which he complains.[8] The court properly noted that "[t]o establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. . . . Such assertions are insufficient regardless of whether

on March 12, 1997. Wehmhoff returned to unrestricted work on May 23, 1997, fifteen weeks after surgery. Meyers is a building maintenance mechanic. As the result of a back injury, Meyers had a lifting restriction of forty pounds and was accommodated on a light duty assignment covering for a custodian who was ill for a period of ten months.

[8] In his appellate brief, the plaintiff claims that there is a genuine issue of material fact as to his claim that the defendant assigned him to perform tasks with equipment that would aggravate his injuries. He contends that the acts of the defendant's agents or employees took place during a critical time "in which the defendant terminated" the plaintiff's employment, yet he provides no date on which the alleged acts took place.

they are contained in a complaint or a brief." (Citations omitted; internal quotation marks omitted.) *New Milford Savings Bank* v. *Roina*, 38 Conn. App. 240, 244–45, 659 A.2d 1226, cert. denied, 235 Conn. 915, 665 A.2d 609 (1995).

The plaintiff also contends that with regard to the medical records submitted by the parties, the court made a decision to believe the evidence submitted by the defendant rather than the plaintiff's evidence. Before beginning our analysis of this contention, it is important to note that in his brief, the plaintiff has failed to distinguish between what he believes to have happened and evidence that supports his version of the events. The defendant, however, has referred us to specific documents and statements in evidence to support its reason for terminating the plaintiff's employment. The plaintiff has failed to draw our attention to facts in a document or testimony that counter the facts relied on by the defendant.

The essence of the plaintiff's claim is that the defendant discriminated against him because he has a 5 percent disability of his back. To support this claim, he relies on the fact that none of the three physicians retained by the defendant to evaluate him stated literally that he is not able to perform the duties of a master mechanic due to his back injury. The plaintiff quoted portions of the reports submitted by the three physicians. Kenneth M. Kramer, an orthopedic surgeon, stated in part in his report of June 22, 2004, that the plaintiff "should be on permanent restrictions with regard to the . . . injury, consisting of a [thirty-five] pound lifting restriction with no repetitive lifting or bending." The July 7, 2004 report of Eric M. Garver, an orthopedic surgeon, provides in part that the plaintiff "does have a prior history, many years ago, with his right arm as having had an ulnar nerve transposition in the right elbow following a work related injury, *however, the [plaintiff] had returned to work. . . . At this*

*point it appears that his [low] back is giving him less of a problem.*" (Emphasis in original.) The plaintiff quoted from a portion of a report dated July 13, 2004, prepared by a rehabilitation physician, Gary D. Solomon, that "currently, [the plaintiff] states that he is virtually pain free except for occasional recurrences of back pain, usually attributed to cold weather. He currently states that he is [able] to bend, twist, turn and lift without recurrence of pain complaints." Those quotations, however, do not place the physicians' conclusions in proper context.

The defendant made the physicians' complete reports available for the court to review, in addition to reports from Polifroni. On the basis of its review of the medical records, the court found that on May 20, 2004, Polifroni stated that the plaintiff "may have difficulty going back to any job that requires physical activities . . . ."[9] In an August 9, 2004 report, Polifroni stated that the plaintiff "should limit his strenuous activities because of his back."[10] Kramer stated that the plaintiff "should be on permanent restrictions . . . ."[11] Garver stated that the

[9] The statement is taken from the "impression" portion of Polifroni's progress report of May 20, 2004, which stated in its entirety: "Persistent lumbar sprain. I think at this time his injuries are permanent. I think he may have difficulty going back to any job that requires physical activities though he was doing light work at his previous job without much intervention with his lower back but his injuries at this time are probably permanent and he sustained a lumbar sprain. I do not expect much improvement."

[10] Polifroni's complete August 9, 2004 note states that "[i]n reference to my note of May 20, 2004, I did not state that [the plaintiff] was unable to work. I expressed my thoughts that he should limit his strenuous activities because of his back pain. He is capable of work and has been working this past year."

[11] Kramer's statement came from the portion of his report labeled "review of symptoms," which stated in part: "My impression is of persistence of the chronic lumbar strain injury sustained in the work incident of 3/18/02, which at this point has indeed clinically plateaued at [maximum medical improvement], with no additional formal treatment measures indicated or anticipated. In accordance with [America Medical Association] [g]uidelines, he has a DRE category 2, 5 [percent] permanent partial impairment on the basis of the chronic lumbar strain, which in medical probability is directly

plaintiff "is able to work light duty. He would be unable to do heavy lifting or repetitively use the right upper extremity."[12] In his report of July 13, 2004, Solomon stated, in part, that the plaintiff "is not capable of performing full duty work as a master mechanic without restrictions . . . ."[13] The plaintiff has not brought to

causally related to the work incident of 3/18/02. He should be on permanent restrictions with regard to [this] injury, consisting of a [thirty-five] pound lifting restriction with no repetitive lifting or bending. As a spinal specialist, not caring for shoulder problems, any analogous assessments regarding the shoulder must be deferred to the specialists who are caring for this condition."

[12] The entire discussion portion of Garver's report states: "At this point I believe the patient is able to work light duty. He would be unable to do heavy lifting or repetitively use the right upper extremity. It is certainly reasonable to proceed as Dr. Gross has suggested with carpal tunnel release of the right hand inasmuch as this is a relatively minimal procedure. Whether the patient should have a re-exploration of his right elbow at the same time is an interesting question. On one hand he is certainly having significant difficulty and it is possible this may give him some improvement if there is entrapped scar found at the time of surgery. On the other hand since this has been persistent for a long period of time I am somewhat pessimistic that this will lead to a great deal of improvement at the elbow. The patient is having no active therapy at this time, which I find strange. Certainly the patient should have some range of motion and strengthening for the right upper extremity especially including the shoulder. Therefore, I believe the patient is disabled with respect to his right upper extremity, however, the patient is able to work selected light duty at this time. It is reasonable to proceed with at least a portion of the recommended surgical procedures."

[13] The impression portion of Solomon's independent medical report states in full: "[The plaintiff] presents with a history of multiple injuries to his lower back, right shoulder and right upper extremity following a work related injury which occurred on March 18, 2002 when he slipped on a step while climbing onto a street sweeper.

"[The plaintiff] further sustained an aggravation of his right upper extremity injuries when he sustained a [second] work related injury while fixing a brake line in 2003.

"He also presents with evidence of carpal tunnel syndrome, which has been attributed to repetitive trauma from his work as a master mechanic.

"I have also reviewed the job requirements of a master mechanic as outlined by the Department of Public Works, Equipment Maintenance Division, Town of Westport.

"It is my opinion that [the plaintiff] is not capable of performing full duty work as a master mechanic without restrictions due to persistent injuries to his right shoulder and right upper extremity which include multiple

the attention of the trial court or this court an opinion from any physician that he is capable of performing all of the duties of a master mechanic despite his multiple injuries. There is, therefore, no genuine issue of material fact as to the plaintiff's inability to perform the job for which the defendant had engaged his services.

The plaintiff relies on a handwritten return to work noted signed by Stewart C. Gross, the physician who treated the plaintiff for the shoulder injury he sustained in 1999. On the note, dated "8-8-04," Gross marked an X in the box next to the language "may return to regular duty work on" and added "10/15/01 & is still in effect as of 8-6-04." When he was deposed, Gross testified that the plaintiff never told him that he, the plaintiff, had sustained a lower back injury.[14]

On the basis of our review of the court's memorandum of decision and the documents submitted to the court for its review when considering the defendant's motion for summary judgment, we conclude that the court did not weigh the evidence but, rather, reviewed it, as it was required to do, in deciding the motion for summary judgment. We also conclude that the court did not improperly find that there is no genuine issue of material fact concerning the lack of a causal connection between the defendant's having awarded the plaintiff

tendinitis as well as ulnar and median nerve neuropathies. Specifically, [the plaintiff] would have ·difficulty complying with the job requirements as indicated by the Department of Public Works, which include: 'Capable of the complete diagnosis, disassembly, overhaul, repair and reassembly of any mechanical, electrical or other breakdown or failure of a motor, truck or piece of construction equipment.

"Due to the chronicity of [the plaintiff's] injuries, I believe that they are permanent in nature."

[14] The plaintiff disclosed Gross as an expert who would testify on his behalf at trial. During his deposition, Gross testified that he did not know that he had been disclosed as an expert. He also testified that his medical specialty is the treatment of hands and arms. He does not treat back injuries. Gross testified that he was not prepared to testify as to the status of the plaintiff's back injury as of August 6, 2004.

a disability pension and his work-related injury of March 18, 2002, and the exercise of his rights under our workers' compensation laws. In other words, there is no genuine issue of material fact that the defendant terminated the plaintiff's employment because he could not work as a master mechanic and not for a discriminatory reason. For those reasons, the court properly rendered summary judgment in favor of the defendant on counts one and two of the plaintiff's complaint.

## II

The plaintiff's third claim is that the court improperly determined that governmental immunity barred his claims of negligent and intentional infliction of emotional distress. This claim lacks merit.

"The general rule is that governments and their agents are immune from liability for acts conducted in performance of their official duties. The common-law doctrine of governmental immunity has been statutorily enacted and is now largely codified in General Statutes § 52-557n." (Internal quotation marks omitted.) *Durrant* v. *Board of Education*, 96 Conn. App. 456, 474, 900 A.2d 608 (2006) (*Schaller, J.,* dissenting), rev'd on other grounds, 284 Conn. 91, 931 A.2d 859 (2007). Section 52-557n provides in relevant part: "(a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct . . . ."

In ruling on the allegations of negligent and intentional infliction of emotional distress, the court properly concluded that a municipality may not be held liable for the intentional acts of its employees pursuant to § 52-557n (a) (2) (A), including intentional infliction of emotional distress. See *Pane* v. *Danbury*, supra, 267 Conn. 684–86.

The court found that the plaintiff had not alleged any statute that would abrogate the defendant's governmental immunity for negligent infliction of emotional distress. On appeal, the plaintiff argues that he alleges Edwards' name in his complaint,[15] which is sufficient to invoke General Statutes § 7-465. In support of this contention, the plaintiff relies on *Williams* v. *New Haven*, 243 Conn. 763, 707 A.2d 1251 (1998). We disagree that *Williams* supports the plaintiff's position. In *Williams*, the plaintiffs brought an action against the city of New Haven but "did not name any agent, employee or officer of the municipality as a *defendant* . . . ." (Emphasis added.) Id., 765. The plaintiffs also did not allege any statute that abrogates governmental immunity or seek indemnification pursuant to § 7-465. Id., 769. Our Supreme Court held that the plaintiffs could not prevail. Id., 765. On procedural grounds, this case is indistinguishable from *Williams*, and the court properly granted the motion for summary judgment as to the plaintiff's claims for negligent infliction of emotional distress.

The plaintiff further argues that he alleged a violation of § 31-290a and that the defendant subjected itself to the requirements of our workers' compensation laws. Our workers' compensation scheme provides a cause of action against an employer who discriminates against an employee because the employee has filed a workers' compensation claim. It does not create liability for all

[15] Edwards is not a defendant in this action.

torts and does not create a statutory basis for the abrogation of governmental immunity as to other torts. Moreover, during oral argument, counsel for the plaintiff conceded that damages for emotional distress may be alleged in a cause of action brought pursuant § 31-290a. The plaintiff's claims for damages for emotional distress, therefore, were encompassed in counts one and two.

The judgment is affirmed.

In this opinion the other judges concurred.