******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# TIMOTHY BEGLEY *v.* STATE
# OF CONNECTICUT ET AL.
## (AC 47188)

Cradle, C. J., and Suarez and Westbrook, Js.

*Syllabus*

The plaintiff state police trooper appealed from the trial court's judgment for the defendant R following the granting of R's motion for summary judgment on the plaintiff's complaint, which alleged that R had transferred the plaintiff from his job in a certain work unit in retaliation for having filed a report three years earlier about another officer's sexual harassment of a female officer. The plaintiff claimed that the court improperly concluded that no genuine issue of material fact existed as to whether he had established a prima facie case of retaliation. *Held*:

The trial court properly rendered summary judgment for R, as the plaintiff failed to establish a factual basis connecting R to the alleged retaliatory transfer, in that it was undisputed that R did not see the report until his deposition in this matter, that the plaintiff had not discussed the report with R or had any dealings at all with R, and the plaintiff's assertion that retaliatory animus on the part R could be inferred from an order that was given to another police unit to stop cooperating with the plaintiff's work unit was merely speculative, the plaintiff having presented no evidence that it was the defendant, rather than another supervisor, who gave the order or that the plaintiff was the target of the alleged retaliatory animus.

Argued June 4—officially released September 2, 2025

*Procedural History*

Action to recover damages for alleged employment discrimination, and for other relief, brought to the Superior Court in the judicial district of Middlesex, where Stavros Mellekas was added as a defendant; thereafter, the court, *Hon. Edward S. Domnarski*, judge trial referee, granted in part the defendants' motion for summary judgment; subsequently, the action was withdrawn in part as against the defendant James Rovella; judgment for the named defendant et al., from which the plaintiff appealed to this court. *Affirmed*.

*Lewis H. Chimes*, for the appellant (plaintiff).

*Laura Vitale*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (defendant James Rovella).

*Opinion*

CRADLE, C. J. The plaintiff, Timothy Begley, appeals from the summary judgment rendered by the trial court in favor of the defendant James Rovella[1] on his claim alleging that he was transferred in retaliation for filing a report of another police officer's sexual harassment of a female officer in violation of General Statutes § 46a-60 (b) (4).[2] On appeal, the plaintiff claims that the court erred in rendering summary judgment in favor of the defendant because it improperly concluded that no genuine issue of material fact existed as to whether he had established a prima facie case of retaliation. We affirm the judgment of the trial court.[3]

The record before the trial court,[4] viewed in the light most favorable to the plaintiff as the nonmoving party,

[1] The state of Connecticut and Stavros Mellekas also are defendants in this action but are not parties to this appeal. We therefore refer in this opinion to Rovella as the defendant.

[2] General Statutes § 46a-60 (b) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . .(4) [f]or any . . . employer . . . to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice . . . has filed a complaint or testified or assisted in any proceeding under section 46a-82, 46a-83 or 46a-84 . . . ."

[3] Because we agree that the plaintiff failed to demonstrate that a genuine issue of material fact existed as to whether he had established a prima facie case of retaliation, we do not reach his additional claim that the trial court erred in concluding that he also failed to demonstrate that a genuine issue of material fact existed as to whether the defendant's proffered legitimate, nondiscriminatory reason for transferring him was pretextual.

[4] At oral argument, counsel for the defendant alerted this court that several pages of deposition transcripts that were included in the plaintiff's appellate brief were not presented to the trial court in opposition to summary judgment. Counsel for the plaintiff thereafter sent correspondence to this court, explaining: "On appeal, as [the plaintiff's] counsel was setting out the facts and arguments for the [a]ppellate [b]rief, counsel realized the error. The [a]ppellate [b]rief was largely identical to the statement of facts in the [o]bjection to [s]ummary [j]udgment, but the proper page references were

reveals the following facts and procedural history. The plaintiff began his employment as a state trooper with the Connecticut State Police in 2001. The state police is a division of the Department of Emergency Services and Public Protection (department). In 2013, the plaintiff was promoted to the position of sergeant and began working in that capacity in the Connecticut Intelligence Center (intelligence center) of the Counter Terrorism Unit of the state police in 2015.[5]

In February, 2016, the plaintiff received a report that Steven Citta, a detective with the Hartford Police Department (Hartford police) who was assigned to work in the intelligence center as a regional intelligence liaison officer and reported directly to the plaintiff, had behaved in a sexually inappropriate manner. At that time, the plaintiff reported directly to Lieutenant Shawn Corey,

made in the [plaintiff's] [b]rief, and the proper deposition pages were attached. In the [a]ppellate [a]ppendix, both the original erroneous deposition pages cited in [the] [p]laintiff's [o]bjection to [s]ummary [j]udgment for those depositions, as well as the proper deposition pages cited in the [a]ppellate [b]rief were included in the [plaintiff's] [a]ppendix. All the evidence cited by [the plaintiff] in [his] objection to summary judgment brief accurately reflected the actual deposition testimony, despite the erroneous page citations and attached deposition pages."

Our review of the record confirms that the plaintiff submitted in the appendix of his appellate brief evidence that he did not submit to the trial court in opposition to summary judgment. Of course, this court cannot, when assessing the propriety of a summary judgment ruling, consider evidence that was not before the trial court. See *Solon* v. *Slater*, 345 Conn. 794, 814 n.9, 287 A.3d 574 (2023). Because the plaintiff did not conform the materials in his appellate appendix to the evidence submitted to the trial court, this court was left with the task of determining which of the 575 pages of the appellate appendix were before the trial court. Although "[i]t is not the role of this court to scour the record in search of support for a party's claim on appeal"; *Weaver* v. *Sena*, 199 Conn. App. 852, 866, 238 A.3d 103 (2020); we nevertheless have carefully reviewed all the evidence submitted to the trial court on summary judgment.

[5] At that time, there were two other units in the Counter Terrorism Unit, namely, the Joint Terrorism Task Force and the Critical Infrastructure Protection Unit. We refer to the units collectively as the intelligence center for ease of reading.

who was the commanding officer of the intelligence center. Corey reported to Major Michael Darcy, the commander of special investigations. On March 3, 2016, at the direction of Corey and Darcy, the plaintiff filed a report of Citta's conduct with the department's Equal Employment Opportunity Office (report).

Citta thereafter was removed from the intelligence center and sent back to work with the Hartford police. The plaintiff did not make the decision, or have any input in the decision, to transfer Citta back to the Hartford police. The plaintiff did not communicate with anybody else at the Hartford police regarding the incident involving Citta. Upon Citta's return to the Hartford police, he was assigned to its Capitol City Crime Center (crime center unit).[6] Citta and another officer at the crime center unit stopped sending certain information to the intelligence center. Citta indicated to a fellow officer that he made the decision not to share information with the intelligence center until the plaintiff and Corey were removed from the intelligence center, but that was his own decision and he could not make that decision for other officers in the crime center unit. Citta had a discussion with Trooper Shawn Benoit regarding "what was happening with the complaint and everything going on" and stated that he told Benoit that "everything that's being handled is being handled at the top," meaning "[his] supervisors and . . . [his] command staff," consisting of the defendant and "the other deputy chiefs and everybody in the place at the time."

At that time, the defendant was the chief of the Hartford police. The report was not sent to the defendant, and he did not see it until he was deposed in this case. The plaintiff did not have any communications with the

---

[6] According to the plaintiff's second amended complaint, the crime center unit was a "newly formed intelligence unit [that] . . . would have to work collaboratively with . . . [the intelligence center]."

defendant regarding the report; nor did he have any other dealings with the defendant. The defendant learned from the deputy chief of the Hartford police, Brian Foley, that there was an investigation regarding Citta's conduct. The defendant did not speak to Citta regarding his transfer back to the Hartford police.

In September, 2016, the investigation into the incident involving Citta was completed, and it was determined that the allegations in the report could not be substantiated because neither of the two officers who reported the incident to the plaintiff, nor the alleged victim, were willing to participate in the investigation or give a statement. Shortly thereafter, Darcy met with the defendant and gave the defendant a copy of the report of the findings of the investigation and discussed with him the lapse of information sharing between the crime center unit and the intelligence center. The defendant subsequently instructed Foley that "there should be no lapse in intelligence sharing between [the crime center unit] and [the intelligence center]."

The defendant left the Hartford police in February, 2018. In February 2019, the defendant was confirmed as the commissioner of the department. On March 14, 2019, the plaintiff was transferred from the intelligence center to Troop H in Hartford where he was assigned to work the midnight shift.

The plaintiff initiated the present action against, inter alia, the defendant,[7] claiming that his transfer out of

---

[7] In count one of his operative second amended complaint, the plaintiff alleged that the state and the defendant violated § 46a-60 (b) (4) by transferring him out of the intelligence center. In count two, the plaintiff alleged that the state, the defendant, and Colonel Stavros Mellekas of the state police violated § 46a-60 (b) (4) by refusing to promote him to lieutenant and imposing a two day suspension that was excessive and unsupported by evidence and state police policies. In count three, the plaintiff alleged that the state failed to promote him and imposed a two day suspension in violation of 42 U.S.C. § 2000e-3 (a).

All of the defendants moved for summary judgment as to all three counts of the plaintiff's complaint. The trial court denied summary judgment as to

the intelligence center in March, 2019, was retaliatory, pursuant to § 46a-60 (b) (4), for his filing of the report in 2016.

On April 17, 2023, the defendant filed a motion for summary judgment on the grounds that the plaintiff had failed to establish a prima facie case for retaliation and that, even if he had, there existed legitimate, nonretaliatory reasons for the plaintiff's transfer, and the plaintiff could not establish that the articulated reasons were a pretext for unlawful retaliation. The defendant argued that the plaintiff failed to demonstrate any causal connection between the plaintiff's filing of the report and his transfer three years later. The defendant further argued that the plaintiff was transferred "due to operational need as part of a reorganization." Along with his memorandum of law in support of his motion, the defendant submitted several exhibits for the court's consideration.

The plaintiff filed an objection to the defendant's motion for summary judgment, arguing that genuine issues of material fact existed as to whether there was a causal connection between his filing of the report and his transfer. He argued that the lapse of three years between the two events does not defeat a causal connection because the defendant was not in a position to retaliate against the plaintiff until shortly before the plaintiff's transfer. The plaintiff further argued that there was a genuine issue of material fact as to whether the defendant's claim that he was transferred for manpower reasons stemming from reorganization was pretextual. Like the defendant, the plaintiff submitted several exhibits in support of his position.[8]

counts two and three. The plaintiff filed a motion for permission to file an interlocutory appeal, which the court denied. The plaintiff thereafter withdrew the second count of his complaint as to the defendant only, thereby disposing of all claims against the defendant, in order to proceed with this appeal. See Practice Book §§ 61-3 and 61-4.

[8] The defendant thereafter filed a reply brief. The defendant also moved to strike several of the plaintiff's exhibits. The trial court indicated to counsel

On November 15, 2023, following a hearing at which the trial court heard argument from counsel,[9] the court issued a memorandum of decision granting summary judgment in favor of the defendant as to count one alleging retaliation. The court concluded, inter alia: "There is a lack of evidence of a temporal or logical connection between the plaintiff's protected activity and the adverse employment action."[10]

The plaintiff thereafter filed a motion to reargue and for reconsideration on the grounds that "[t]he court misapplied the legal standard for providing retaliatory motive under the Fair Employment Practices Act [General Statutes § 46a-51 et seq.] and state and federal Supreme Court precedent, ignored or failed to consider much of the plaintiff's evidence, impermissibly invaded the province of the jury by improperly weighing the evidence, made credibility determinations and failed to consider all permissive inferences in a manner favorable to the plaintiff in its determination that no genuine

---

that it would consider the defendant's motion to strike certain of the exhibits submitted by the plaintiff in opposition to summary judgment simultaneously with the motion for and objection to summary judgment. The court indicated in its decision: "The [defendant] filed a motion to strike certain evidence submitted with the plaintiff's opposition to summary judgment, on the grounds that the items were not admissible evidence. See Docket Entry #172. The court did not utilize these contested items in ruling on this motion; consequently, it was not necessary to make a determination as to their admissibility." In arguing that the court "erroneously disregarded the plaintiff's summary judgment exhibits that had been the subject of the defendant's motion to strike," the plaintiff neither identifies those exhibits, why they should not have been disregarded nor how he was harmed by the court's decision not to consider them.

[9] Following oral argument on the motion for summary judgment, the plaintiff filed a supplemental response to the defendant's motion for summary judgment on August 14, 2023, and the defendant filed a reply memorandum of law on August 28, 2023.

[10] The trial court also concluded that the plaintiff failed to demonstrate that a genuine issue of material fact existed as to whether the defendant's proffered reason for the plaintiff's transfer was pretextual. As previously noted, we do not reach the plaintiff's challenge to this conclusion. See footnote 3 of this opinion.

issues of material fact existed [as to the plaintiff's claim that his transfer was retaliation by the defendant for the plaintiff's filing of the report].'' Following a hearing, the court granted the plaintiff's motion to reargue but denied the relief requested in his motion. This appeal followed.

We begin by setting forth the following applicable legal principles. "The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *DiPietro* v. *Farmington Sports Arena, LLC*, 306 Conn. 107, 115–16, 49 A.3d 951 (2012). The standard of review of a trial court's decision granting a motion for summary judgment is plenary. Id., 116.

"[T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . Moreover, [t]o establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. . . . Such assertions are insufficient regardless of

whether they are contained in a complaint or a brief. . . . Further, unadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact. . . . Mere statements of legal conclusions . . . and bald assertions, without more, are insufficient to raise a genuine issue of material fact capable of defeating summary judgment." (Citation omitted; internal quotation marks omitted.) *Martin* v. *Westport*, 108 Conn. App. 710, 721–22, 950 A.2d 19 (2008).

"[I]t [is] incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists. . . . [M]aterial facts are those that will make a difference in the case, and they must be pleaded." (Citation omitted; internal quotation marks omitted.) *Martinez* v. *Premier Maintenance, Inc.*, 185 Conn. App. 425, 455, 197 A.3d 919 (2018).

"[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . A party opposing a motion for summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) Id., 456. "A mere assertion of fact in the affidavit of the party opposing summary judgment is not enough to establish the existence of a material fact that, by itself, defeats a claim for summary judgment." (Internal quotation marks omitted.) Id., 451.

"The standard applicable to the plaintiff's claim of . . . retaliation is the *McDonnell Douglas-Burdine*[11] model of analysis. . . . Under this framework, the

---

[11] See *Texas Dept. of Community Affairs* v. *Burdine*, 450 U.S. 248, 252–56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802–804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

plaintiff first must establish a prima facie case, then the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for its employment decision. . . . Once the defendant offers a legitimate, nondiscriminatory reason, then the plaintiff has the burden to prove by a preponderance of the evidence that the proffered reason is pretextual." (Citations omitted; footnote in original; footnote omitted; internal quotation marks omitted.) *Lassen* v. *Hartford*, 223 Conn. App. 285, 290–91, 308 A.3d 564 (2024).

The plaintiff claims that the trial court erred when it determined that no genuine issue of material fact existed as to whether he had failed to establish a prima facie case of retaliation in that he had not presented any evidence demonstrating a causal connection between his filing of the report and his transfer out of the intelligence center three years later.[12] We are not persuaded.

"To establish a prima facie case of retaliation, a plaintiff must show (1) that he participated in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action against him; and (4) a causal connection between the protected activity and the adverse employment action." (Internal quotation marks omitted.) Id., 290–91 n.5. Implicit in the requirement that the plaintiff show a causal connection between his participation in a protected activity and the alleged adverse action is a showing that the defendant knew or was otherwise aware that the plaintiff had engaged in that protected activity. See, e.g., *Forestier* v. *Bridgeport*, 223 Conn. App. 298, 319, 308 A.3d 102 (2024).

---

[12] The plaintiff claims that "[t]he court did not appear to read or review [his] exhibits" and "ignored much of the relevant factual detail and supporting arguments submitted by the plaintiff." Our review of the record reveals no basis for these claims.

"[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." (Internal quotation marks omitted.) *Ayantola* v. *Board of Trustees of Technical Colleges*, 116 Conn. App. 531, 539, 976 A.2d 784 (2009).

"Since the court, in deciding a motion for summary judgment, is not to resolve issues of fact, its determination of whether the circumstances giv[e] rise to an inference of discrimination must be a determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive. . . . In the absence of any affirmative evidence of a causal connection between [the defendant's] discriminatory animus toward the plaintiff and the defendant's [alleged adverse action], no inference of the defendant's discriminatory intent can be made." (Citation omitted; internal quotation marks omitted.) *Martinez* v. *Premier Maintenance, Inc.*, supra, 185 Conn. App. 449–50.

The plaintiff argues that he presented direct evidence of causation by demonstrating the defendant's retaliatory animus toward the plaintiff in that "[the defendant] directed [the crime center unit] to stop sharing evidence with [the intelligence center] until [the plaintiff] was transferred from [the intelligence center] or apologized." The plaintiff's argument fails for the following reasons.

First, the plaintiff has failed to establish a factual basis connecting the defendant to the alleged retaliation. The plaintiff asserts that "[i]mmediately after Citta's removal from [the intelligence center] . . . [the

crime center unit] . . . immediately stopped sharing information with . . . [the intelligence center]." Citta was transferred from the intelligence center on March 3, 2016. Although the defendant learned of Citta's transfer from Foley in March, 2016, the undisputed evidence demonstrates that the defendant did not see the report until he was deposed in this case.[13] As noted herein, it is undisputed that the plaintiff did not discuss the report with the defendant or anybody else at the Hartford police, nor did the plaintiff have any dealings at all with the defendant. After the investigation into Citta's conduct was completed in September, 2016, the defendant received a copy of the report of the investigation from Darcy. Although that report listed the plaintiff as the complainant, there is no evidentiary basis on which a reasonable fact finder could infer that the defendant knew before September, 2016, that the plaintiff had filed the report. Therefore, there also is no evidentiary basis on which one could infer that any alleged retaliation that occurred immediately following Citta's transfer in March, 2016, could be attributed to the defendant. See *Mele* v. *Hartford*, 270 Conn. 751, 778, 855 A.2d 196 (2004) (discrimination complaint dismissed where insufficient evidence to prove that plaintiff had exercised rights under Workers' Compensation Act, General

---

[13] In support of his argument that the defendant "had knowledge of [the plaintiff's] protected conduct," the plaintiff cited, in his memorandum of law in opposition to summary judgment, an excerpt of the defendant's deposition testimony wherein he purportedly testified that he had received a copy of the report in March, 2016, which allegedly caused the defendant to retaliate by directing the Hartford police to cease sharing information with the intelligence center. The pages cited by the plaintiff, however, do not support the plaintiff's assertion that the defendant received a copy of the report filed by the plaintiff in March, 2016. The testimony cited by the plaintiff refers to the report of the completed investigation of the incident involving Citta, which was provided to the defendant by Darcy in September, 2016. The defendant submitted excerpts of the defendant's deposition testimony wherein the defendant testified that he did not see the report until he was deposed in this case. The plaintiff has not cited to any evidence disputing that testimony.

Statutes § 31-275 et seq., and that defendants knew that she had exercised those rights and discriminated against her based on that knowledge); *Knoblaugh* v. *Marshall*, 64 Conn. App. 32, 38, 779 A.2d 218 (plaintiff failed to meet burden of proving that defendant violated General Statutes § 31-290a of Workers' Compensation Act where defendant was unaware of her intention to exercise rights under that act), cert. denied, 258 Conn. 916, 782 A.2d 1243 (2001).

The plaintiff likewise has failed to demonstrate that a genuine issue of material fact exists as to whether the defendant directed the crime center unit to stop sharing information with the intelligence center. The defendant testified that neither he nor anybody else "in the executive team of the [Hartford police] ever [told] Citta that . . . [the crime center unit] was not going to cooperate with [the intelligence center] until there were new people in command at the organization." The defendant testified that he "spoke with . . . Foley and instructed him that there should be no lapse in intelligence sharing between [the crime center unit] and [the intelligence center]." The plaintiff argues that Citta stated that the crime center unit's refusal to share information with the intelligence center after his removal came from "the top," and "[w]hen [Citta] referenced 'the top' he was referring to [the defendant]." In so arguing, the plaintiff mischaracterizes the evidence in the record. Citta testified that the decisions involving his investigation and whether to discontinue sharing information with the intelligence center were being handled "at the top . . . it's my supervisors and it's my command staff." When asked whether "the top" was the defendant, Citta responded, "yeah, [the defendant] and . . . the other deputy chiefs and everybody in the place at the time."[14] Although Citta included the defendant in his reference to "the top," the plaintiff presented

[14] In his principal appellate brief, the plaintiff asserts that, "on August 16, 2016, Citta explicitly also told . . . Trooper [Benoit] that he was under

no evidence that it was the defendant, versus the other deputy chiefs or any of Citta's other supervisors or command staff, who directed him to stop sharing information with the intelligence center.[15] The plaintiff's assertion that it was the defendant who gave the order to stop cooperating with the intelligence center is based merely on speculation, which is insufficient to create an issue of fact to defeat summary judgment.[16]

Even if the plaintiff had demonstrated that a genuine issue of material fact exists as to whether the defendant ordered the crime center unit to stop cooperating with the intelligence center, that fact is immaterial to the plaintiff's burden to prove retaliatory animus by the defendant toward *the plaintiff*. The plaintiff has failed to identify any evidence that the alleged retaliatory animus that may be inferred by the lack of cooperation with the intelligence center following Citta's removal was targeted at the plaintiff versus the intelligence center. This is particularly evident in light of the undisputed facts that the plaintiff filed the report at the direction of Corey and Darcy and that the plaintiff had no role in the decision to transfer Citta back to the Hartford police.[17]

orders from [the defendant] not to cooperate with [the intelligence center] until he received a written apology or command staff changed." He then cites to a memo sent to him by Benoit regarding a conversation that Benoit had with Citta. The plaintiff's citation to the trial court record is "Pl. Ex. 16." That memo is not plaintiff's exhibit 16. Our review of the record reveals that that memo was not submitted to the trial court. Moreover, we have reviewed that memo, which the plaintiff improperly included in the appendix to his principal appellate brief, and it makes no mention of the defendant.

[15] Indeed, Citta also indicated that it was his decision that he, himself, would not share information with the intelligence center and that he could not make that decision for his unit.

[16] The plaintiff also argues that "[a] reasonable fact finder could infer retaliatory intent from the subsequent threats and warnings that were given to [him] not to pursue his claims and grievances." The plaintiff has failed to provide any evidence that these alleged threats and warnings came from or were directed by the defendant.

[17] The plaintiff also argues that the defendant demonstrated retaliatory animus when he refused to replace Citta after he was transferred back to

Although we are mindful that questions of causal connection and the existence of retaliatory animus are ordinarily issues of fact best determined by the fact finder, the plaintiff, on summary judgment, must at least proffer some factual predicate grounded in evidence rather than mere assertions based on speculation and conjecture to establish the existence of a genuine issue of material fact. Here, the plaintiff has failed to do so.

The judgment is affirmed.

In this opinion the other judges concurred.

---

the Hartford police. Again, even if this were true, it is immaterial to the issue of whether the defendant demonstrated retaliatory animus toward the plaintiff.