ROBIN W. CALLENDER *v.* REFLEXITE CORPORATION
(AC 34058)

Beach, Alvord and Bear, Js.

Argued March 5—officially released June 18, 2013

*Jennifer B. Levine*, with whom was *Harvey L. Levine*, for the appellant (plaintiff).

*Linda L. Morkan*, with whom was *Stephen W. Aronson*, for the appellee (defendant).

*Opinion*

BEAR, J. The plaintiff, Robin W. Callender, appeals from the summary judgment rendered by the trial court in favor of the defendant, Reflexite Corporation (Reflexite), on the plaintiff's complaint, which alleged discrimination or retaliation in violation of General Statutes § 31-290a[1] and promissory estoppel. On appeal, the

---

[1] General Statutes § 31-290a provides: "(a) No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter.

"(b) Any employee who is so discharged or discriminated against may either: (1) Bring a civil action in the superior court for the judicial district where the employer has its principal office for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if he had not been discriminated against or discharged and any other damages caused by such discrimination or discharge. The court may also award punitive damages. Any employee who prevails in such a civil action shall be awarded reasonable attorney's fees and costs to be taxed by the court; or (2) file a complaint with the chairman of the Workers' Compensation Commission alleging violation of the provisions of subsection (a) of this section. Upon receipt of any such complaint, the chairman shall select a commissioner to hear the complaint, provided any commissioner who has previously rendered any decision concerning the claim shall be excluded. The hearing shall be held in the workers' compensation district where the employer has its principal office. After the hearing, the commissioner shall send each party a written copy of his decision. The commissioner may award the employee the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he otherwise would have been eligible if he had not been discriminated against or discharged. Any employee who prevails in such a complaint shall be awarded reasonable attorney's fees. Any party aggrieved by the decision of the commissioner may appeal the decision to the Appellate Court." The plaintiff in the present case chose to exercise her rights under § 31-290a (b) (1) by bringing this action in Superior Court.

plaintiff claims that the court (1) improperly denied her motion to strike an affidavit submitted by the defendant in support of its motion for summary judgment, and (2) erred in rendering summary judgment by improperly (a) construing the complaint too narrowly and (b) finding that there were no material facts in dispute. We affirm the judgment of the trial court.

The plaintiff's relevant allegations in her complaint and certain facts discernible from the record inform our review of her claims on appeal. Such relevant allegations are set forth in this and following paragraphs. The plaintiff had been an employee at the Reflexite Films Division of the defendant since 1987, primarily doing manual labor as a machine tool operator. In May, 2006, the plaintiff held the position of team leader of three different departments, which she named as rigid, slitting and FPF.[2] She "refers to herself as a machine tool operator and supervisor in a team that routinely shifted extremely heavy rolls of polyester around the shop floor . . . ." The plaintiff was injured several times during her employment with the defendant and filed claims for workers' compensation on at least five occasions, including filing two claims for repetitive trauma, one in 2004 and one in 2005. Because of her various work-related injuries, the defendant provided light duty work for the plaintiff during her surgical recovery periods

---

[2] In her deposition testimony, a copy of which was attached to the defendant's motion for summary judgment, the plaintiff explained that there were three rooms, coating, casting and rigid, which were separated by doors or walls. As team leader of the rigid line, the plaintiff explained, she was responsible for making sure there were enough materials to run the line, she inspected the materials and she made sure orders were completed on time. Her work on the rigid line entailed getting big heavy rolls of materials from the warehouse and pulling them approximately two hundred fifty feet or more to the rigid room. Her duties for working on the Titan Slitter, which was located in the coating room, involved taking a thirty-two inch roll and slitting it down to ten inches or taking different size rolls and slitting them differently, whatever was requested. The FPF line was a new machine that made polycarbonate film but it was in the experimental stages. The plaintiff was responsible for attempting to get the FPF machine to run, changing the belts, washing the belts and cleanup.

between 1998 and 2005. Due to work-related surgeries to her right hand, the plaintiff was out of work from March 14, 2005 through May 1, 2005, and from December 5, 2005 through January 22, 2006. The plaintiff thereafter was absent from work beginning April 30, 2006 through May 10, 2006, returning to work for one day on May 11, 2006. She began treatment with a neurologist on May 22, 2006. At a June 29, 2006 workers' compensation hearing, the defendant was put on notice that the plaintiff "was no longer able to perform the requisite physical demands of her particular job." The workers' compensation commissioner ruled that the plaintiff could perform only light duty work, and the commissioner ordered her to perform job searches. On August 15, 2006, the workers' compensation commissioner stated that the plaintiff had established a recognizable workers' compensation claim.

"In response to budgetary concerns in the summer of 2006, the [d]efendant started planning some internal changes. It decided to move the Reflexite Collimating Film Group to its Rochester, New York facility and to phase out the said Rigid Line by year end." On August 18, 2006, Lisa M. Casey, the human resource manager for the defendant, contacted the plaintiff and scheduled a meeting with her for August 31, 2006. At this meeting, Casey told the plaintiff that, effective immediately, her position was being eliminated because the defendant was discontinuing the rigid manufacturing line. The defendant offered the plaintiff a severance package and encouraged her to accept it. The plaintiff did not accept the severance package offer, but made a counteroffer that would permit her to bring a claim under § 31-290a, which the defendant rejected. The defendant then made its own counteroffer, which the plaintiff rejected.

The defendant offered its employees a medical leave of absence, which, in part, was based on the employee's

length of service and required an absence from work for more than one week. Because of her length of service with the defendant, the plaintiff would have been eligible for up to twelve months of medical leave, which also would have maintained her health and life insurance plans. The defendant did not offer her this benefit, but, instead, permitted her to be out of work under the federal Family Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.

The plaintiff had been singled out by the defendant and was dealt with separately from the other employees affected by the decision to discontinue the rigid manufacturing line, as she was the only one who was offered only a severance package. The other affected employees were offered early retirement, a considerably better severance package or the ability to take an available position with the defendant. The defendant's early retirement program had permitted employees, with ten or more years of service to the company, to retire at age fifty-five. In the fall of 2006, however, the defendant lowered its early retirement program eligibility to age fifty-three. The plaintiff, who was forty-three years old at the time, was not eligible to take advantage of this program, but another employee who had worked with the plaintiff was eligible because of the lowered age.

The plaintiff filed the present action against the defendant claiming that it had violated § 31-290a by retaliating or discriminating against her because she had filed a workers' compensation claim. She also alleged a cause of action for promissory estoppel. On February 7, 2011, the defendant filed a motion for summary judgment, which the court granted on November 9, 2011, in a written memorandum of decision. On November 18, 2011, the plaintiff filed a motion for reconsideration or articulation, which the court granted, in part, on December 7, 2011. The court reconsidered its ruling

and reaffirmed its judgment in a written memorandum of decision. This appeal followed.[3]

## I

The plaintiff claims that the court improperly denied her motion to strike an affidavit submitted by the defendant in support of its motion for summary judgment. Specifically, she argues that the affidavit, authored by Casey (Casey affidavit), was false and produced in bad faith. The plaintiff contends that a document that she produced demonstrated, conclusively, the falsity of the Casey affidavit and, therefore, the court erred, as a matter of law, in refusing to strike it. The defendant argues that this issue is moot because the trial court specifically stated that it did not use the facts alleged to be false from the Casey affidavit when rendering judgment, and, in the alternative, that the court properly exercised its discretion in denying the plaintiff's motion to strike because the plaintiff did not establish any falsity in the Casey affidavit and her motion to strike was overly broad. We conclude that the court did not abuse its discretion in denying the plaintiff's motion to strike.

The Casey affidavit consists of four typed pages and represents that the facts stated therein are based on business records and on Casey's personal knowledge. The facts set forth therein include the following: the plaintiff was terminated from her position with the defendant because the plaintiff's position had been eliminated during company-wide restructuring, there was no light duty work available to give the plaintiff during the summer and fall of 2006, the plaintiff never submitted paperwork requesting leave under the Family Medical Leave Act, the plaintiff had stated the she was physically unable to work and could not do her job, the plaintiff did not bid on any open positions with

[3] In this appeal, the plaintiff has not addressed the court's granting of summary judgment on her promissory estoppel cause of action. We therefore deem any possible issue related to that cause of action abandoned.

the defendant and did not rank her position, and the defendant's short-term and long-term disability leaves are available only to employees who have sustained injuries outside the workplace or who have medical conditions unrelated to their work duties. The defendant took no issue with any of these sworn facts in her motion to strike. Rather, she moved to strike the entire affidavit on the ground that Casey falsely averred to an additional fact, namely, that if the defendant had lowered the retirement age to include the plaintiff in its early retirement program, an additional thirteen employees would have been eligible to retire. The plaintiff produced a document, which she had obtained from the defendant during discovery, that contained a chart showing job titles of employees who were eligible for early retirement, the ages of those employees in these particular job titles who were eligible for early retirement and the ages of those employees in these job titles who were not eligible for early retirement.[4] She argued

| Job Titles of those Eligible for Early Retirement | Ages of those eligible for Early Retirement Must be 53 years of age by: December 31, 2006 | Ages of those in the position not eligible for early retirement as of December 31, 2006 |
| --- | --- | --- |
| XP Coordinator | 59 | |
| RCF Technician I | 59 | 35, 36, 37, 22, 24, 25 (2) |
| Casting Technician - Rigid Line | 59, 54 | |
| Casting Technician & Casting Technician I | 53, 63 | 37, 29, 35, 24 |
| Casting Technician II | 54 | 38 |
| Coating Technician & Coating Technician I | 59 | 34, 22, 37 |
| Coating Certification Technician | 57 | |
| Logistics Technician | 55 | 49, 40 |

that this chart demonstrated that if the defendant had lowered the retirement age to include the plaintiff, only the plaintiff and one additional employee would have been added to those eligible to take early retirement. Thus, she argued, the "assertions made in . . . Casey's affidavit are false . . ." and the affidavit should be stricken.

The court summarily denied the plaintiff's motion to strike the Casey affidavit, and, after the plaintiff filed a motion to reconsider, which the court granted, it concluded that even if there was a "potential inconsistency" between the document submitted by the plaintiff and that single portion of the Casey affidavit, such potential inconsistency would not provide a basis to strike the affidavit in its entirety. The court affirmed its earlier ruling denying the motion to strike, holding that the motion was overbroad. We are not persuaded that the court erred in denying her motion to strike.

"Practice Book § 17-48 provides the basis in law for the plaintiffs' claim. Section 17-48 provides: 'Should it appear to the satisfaction of the judicial authority at any time that any affidavit is made or presented in bad faith or solely for the purpose of delay, the judicial authority shall forthwith order the offending party to pay to the other party the reasonable expenses which the filing of the affidavit caused that party to incur, including attorney's fees. Any offending party or attorney may be adjudged guilty of contempt, and any offending attorney may also be disciplined by the judicial authority.' Affidavits submitted in support of a motion for summary judgment 'shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . .' Practice Book § 17-46. Our Supreme Court has noted that '[i]t is conceivable that in some case an affidavit might be so palpably false

that the court could properly strike it from the file and render a summary judgment. To support such a judgment, however, there would have to be a finding of the court to the effect that the affidavit was false.' *Perri* v. *Cioffi*, 141 Conn. 675, 680, 109 A.2d 355 (1954)." *Zbras* v. *St. Vincent's Medical Center*, 91 Conn. App. 289, 293, 880 A.2d 999, cert. denied, 276 Conn. 910, 886 A.2d 424 (2005).

In this case, the plaintiff sought to strike an entire four page affidavit that contained many facts to which Casey averred on the ground that one of those factual assertions was false. The court held that the motion to strike was overbroad because even if there was a "potential inconsistency" between that one factual assertion in the Casey affidavit and the document submitted by the plaintiff, the remainder of the Casey affidavit was uncontested. Our review of the record leads us to agree with the court's assessment of the plaintiff's motion to strike as overbroad. We conclude, therefore, that the court properly exercised its discretion in denying the plaintiff's motion to strike the Casey affidavit.

II

The plaintiff also claims that the court erred in rendering summary judgment by improperly (a) construing the complaint too narrowly and (b) finding that there were no material facts in dispute. After setting forth the applicable standard of review, we will consider each claim in turn.

"The law governing summary judgment and the accompanying standard of review are well settled. Practice Book § [17-49] requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . .

The facts at issue are those alleged in the pleadings." (Internal quotation marks omitted.) *Grasso* v. *Connecticut Hospice, Inc.*, 138 Conn. App. 759, 764, 54 A.3d 221 (2012). "This court's review of a trial court's granting of a motion for summary judgment is plenary in nature." *Martin* v. *Westport*, 108 Conn. App. 710, 716, 950 A.2d 19 (2008).

A

The plaintiff claims that the court erred in rendering summary judgment by improperly construing her complaint too narrowly. She argues that, because of its narrow reading of her complaint, the court "mistakenly concluded that it need not consider the plaintiff's claims that the defendant discriminated against her by denying her the opportunity to rank her position and the ability to apply for short-term or long-term disability retirement because those claims were not cited in her complaint." The defendant argues that the court sufficiently reviewed the plaintiff's allegation regarding short and long-term disability retirement in its memorandum of decision on the plaintiff's motion for reconsideration or articulation. Further, it argues, although the court did not review the plaintiff's allegation concerning ranking, the court did state that it would not review this allegation because the plaintiff had failed to brief it in her objection to the defendant's motion for summary judgment.

Although claiming that the court erred in failing to consider these two allegations of discrimination when rendering summary judgment, the plaintiff also acknowledges in a footnote in her brief to this court that the trial court, in fact, in its memorandum of decision ruling on the plaintiff's motion for reconsideration or articulation, did address her allegation that the defendant discriminated against her by failing to give her an opportunity to apply for long or short-term disability

retirement. She further acknowledges in her brief that the court declined to review her claim about ranking because it was not briefed in her objection to the motion for summary judgment. The plaintiff, however, fails to address the import of the court's ruling and, instead, simply argues that the court acted improperly in failing to address these claims because it read her complaint too narrowly.

After thoroughly reviewing the record, including the court's thorough memoranda of decisions, the plaintiff's objection to the defendant's motion for summary judgment and the plaintiff's brief to this court, we conclude that the court fully considered the plaintiff's allegation concerning disability retirement in its memorandum of decision on the plaintiff's motion for reconsideration or articulation, and that the court declined to consider her allegation regarding ranking because it had not been briefed by the plaintiff in her objection to the defendant's motion for summary judgment. Because the plaintiff's claim on appeal is based on a faulty premise, we decline to address it further.

B

The plaintiff also claims that the court erred in rendering summary judgment where there existed material facts in dispute. She argues that the court "neglected to review all of the evidence in the record and did not construe the evidence in a light most favorable to the plaintiff. Moreover, the trial court failed to evaluate the defendant's intermediate burden of production under the proper framework thereby granting summary judgment where the defendant either did not fulfill its burden of producing legitimate, nondiscriminatory reason[s] for its employment decisions or by misconstruing the defendant's proffered reason and assessing the plaintiff's evidence against the misinterpreted reason." The defendant argues that it "moved for summary

judgment claiming that it was entitled to judgment as a matter of law because the undisputed evidence revealed that [it] had not discriminated against the plaintiff in any of the ways she had alleged." It contends that the court correctly granted its motion for summary judgment because there were no issues of material fact and it was entitled to judgment as a matter of law.

"The burden of proof in actions involving § 31-290a is stated in *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 53, 578 A.2d 1054 (1990), and *Chiaia* v. *Pepperidge Farm, Inc.*, 24 Conn. App. 362, 366, 588 A.2d 652, cert. denied, 219 Conn. 907, 593 A.2d 133 (1991). The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. . . . In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. . . . If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. . . . If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy [the] burden of persuading the factfinder that [the plaintiff] was the victim of discrimination either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. . . . *Chiaia* reiterates the *Ford* outline for the burden of proof in § 31-290a (a) cases." (Internal quotation marks omitted.) *Kopacz* v. *Day Kimball Hospital of Windham County, Inc.*, 64 Conn. App. 263, 268, 779 A.2d 862 (2001); see also *Hammond* v. *Bridgeport*, 139 Conn. App. 687, 692, 58 A.3d 259 (2012).

"To establish a prima facie case of discrimination under § 31-290a, the plaintiff must show that she was exercising a right afforded her under the [Workers' Compensation Act (act), General Statutes § 31-275 et seq.] and that the defendant discriminated against her for exercising that right. . . . [T]he plaintiff must show a [causal] connection between exercising her rights under the act and the alleged discrimination she suffered. Implicit in this requirement is a showing that the defendant knew or was otherwise aware that the plaintiff had exercised her rights under the act. . . . [T]o establish [a] prima facie case of discrimination, the plaintiff must first present sufficient evidence . . . that is, evidence sufficient to permit a rational trier of fact to find [1] that she engaged in protected [activity] . . . [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action . . . ." (Internal quotation marks omitted.) *Martin* v. *Westport*, supra, 108 Conn. App. 717–18.

In the present case, the defendant conceded for purposes of its summary judgment motion that there was no genuine issue of material fact that the plaintiff had alleged a prima facie case of discrimination. The burden, therefore, then shifted to the defendant to rebut the presumption of discrimination by submitting evidence of a legitimate, nondiscriminatory reason for its actions. If the defendant successfully rebuts the presumption, the plaintiff then must produce evidence that could persuade a rational fact finder that the defendant's proffered explanation is unworthy of credence or is pretextual. See *Hammond* v. *Bridgeport*, supra, 139 Conn. App. 692; *Kopacz* v. *Day Kimball Hospital of Windham County, Inc.*, supra, 64 Conn. App. 268. We agree with the trial court that the defendant successfully

rebutted the presumption of discrimination in this case and that the plaintiff, thereafter, failed to produce evidence that could persuade a rational fact finder that the defendant's nondiscriminatory reasons were not worthy of credence or that they were pretextual.

In the present case, the plaintiff alleged that the defendant had discriminated against her in several ways: (1) by terminating her employment on August 31, 2006, (2) by denying her light duty work during the summer and fall of 2006, (3) by denying her a one year medical leave of absence, (4) by denying her short or long-term disability benefits, (5) by excluding the plaintiff from its early retirement program, and (6) by offering her a severance package that was not equal to that of other employees.[5] On appeal, the plaintiff argues that there are numerous issues of material fact relative to each of her allegations of discrimination or retaliation, and she contends that the defendant did not produce legitimate, nondiscriminatory reasons for its actions. We disagree.

"It is frequently stated in Connecticut's case law that, pursuant to Practice Book §§ 17-45 and 17-46, a party opposing a summary judgment motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . Moreover, [t]o establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. . . . Such assertions are

---

[5] The plaintiff also alleged that the defendant discriminated against her by not allowing her to rank her position. We decline to review that allegation because the plaintiff failed to brief it in her objection to the defendant's motion for summary judgment before the trial court. See part II A of this opinion.

insufficient regardless of whether they are contained in a complaint or a brief. . . . Further, unadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact. . . . Mere statements of legal conclusions . . . and bald assertions, without more, are insufficient to raise a genuine issue of material fact capable of defeating summary judgment." (Citation omitted; internal quotation marks omitted.) *Martin* v. *Westport*, supra, 108 Conn. App. 721–22. The same standard applies in cases brought pursuant to § 31-290a. See, e.g., id., 720–22.

1

The plaintiff claims that the defendant failed to produce a nondiscriminatory reason for terminating her employment, and that there are disputed material facts related to this claim. She argues that the defendant advanced three reasons for discharging the plaintiff, to wit, the elimination of the plaintiff's position, the plaintiff's inability to work, and the lack of light duty work available, but that the court looked only at the first reason advanced by the defendant and failed to consider all three reasons. The defendant argues that the court properly determined that it was undisputed that the "the plaintiff's employment was terminated only after a company-wide restructuring resulted in the elimination of her position . . . [and t]he plaintiff herself has repeatedly acknowledged the undisputed fact that the Rigid Line was being moved to Rochester at the end of 2006." It also argues that the plaintiff offered no evidence to rebut these facts. We agree with the defendant.

In the plaintiff's complaint, she alleged that she had been an employee at the Reflexite Films Division of the defendant since 1987, primarily doing manual labor, as a machine tool operator, and that, on May 12, 2006, she held the position of team leader of three different

departments, namely, rigid, slitting and FPF. On June 29, 2006, the defendant was put on notice that the plaintiff "was no longer able to perform the requisite physical demands of *her particular job.*" (Emphasis added.) On August 31, 2006, the defendant informed the plaintiff that her employment was being terminated because the rigid manufacturing line was being discontinued. The plaintiff had also alleged in her complaint that in the summer of 2006, the defendant began planning internal changes because of budgetary concerns and that it would be moving the collimating film group to New York and phasing out the rigid line by the end of the year. Also, in the Casey affidavit, she averred that the defendant had terminated the plaintiff's employment because the plaintiff's "position was eliminated as part of a company-wide restructuring."

On the basis of these undisputed facts and the admissions by the plaintiff in her complaint, it is beyond dispute that there existed a legitimate nondiscriminatory reason for the defendant to have terminated the plaintiff's employment—her position was being eliminated. Although the plaintiff contends that the court was required to look beyond this reason and examine the additional reasons or explanations given by the defendant for terminating the plaintiff's employment, we conclude that it suffices that the defendant set forth one legitimate nondiscriminatory reason and that the court was not required to examine every reason or explanation set forth by the defendant as long as it met its burden of producing one legitimate reason.

The question then is whether the plaintiff provided evidence that the defendant's reason for terminating the plaintiff's employment, that her position was eliminated as part of a company-wide restructuring, merely was pretextual. We conclude that no such evidence was put forth by the plaintiff. In fact, when the plaintiff was asked during oral argument before the trial court

whether she was claiming that the defendant's move to New York was pretextual, she responded in the negative. On appeal, the plaintiff still points to no evidence in support of her claim that her discharge from employment was in retaliation for her having filed a claim for workers' compensation benefits. Accordingly, we conclude that the plaintiff's claim has no merit.

2

The plaintiff next claims that the defendant failed to produce a nondiscriminatory reason for denying her light duty work during the summer and fall of 2006, and that there are disputed material facts related to this claim. The defendant argues that it produced evidence that there was no light duty work available for the plaintiff and that she failed to produce any evidence to the contrary. We agree with the defendant.

In her complaint, the plaintiff alleged that the defendant stated that it "did not have any light duty work that would have fit within her restriction, although such light duty work was available to the [p]laintiff from 1998 to 2005." She argues on appeal that the court improperly accepted this as a nondiscriminatory reason for denying her light duty work despite the plaintiff's affidavit stating that "there were two other machines that she regularly operated that fit her light duty requirements, specifically the FPF machine and the [r]igid line, both of which were functioning and in use from June through December of 2006." We disagree with the plaintiff's analysis. Our law requires the court to examine whether the defendant has produced a legitimate nondiscriminatory reason for denying light duty work to the plaintiff. It is only after making such a determination that the court would look to the plaintiff's evidence to assess whether it could establish that the proffered reason was not credible or was pretextual. It would have been improper for the court to have examined the

plaintiff's affidavit in making a determination concerning the defendant's production burden. "[T]he burden . . . shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. . . . If the defendant carries this burden of production . . . [t]he plaintiff . . . must satisfy [the] burden of persuading the factfinder that [the plaintiff] was the victim of discrimination either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Internal quotation marks omitted.) *Kopacz* v. *Day Kimball Hospital of Windham County, Inc.*, supra, 64 Conn. App. 268. We conclude that the court properly determined that the defendant produced a legitimate nondiscriminatory reason for denying light duty work to the plaintiff—there was no light duty work available that fit within the plaintiff's restrictions.

As to whether the plaintiff offered evidence in rebuttal of the defendant's legitimate nondiscriminatory reason for not assigning her to light duty work, the plaintiff points to her affidavit and to the affidavits provided by employees of the defendant who attested, in relevant part, that light duty work had been given to them or to others between 1998 and February, 2010. She argues that these affidavits contradict the defendant's evidence that no light duty work was available for her that fit within the plaintiff's restrictions. Having reviewed these affidavits, we disagree with the plaintiff's contention and conclude that there are no facts set forth therein that aver that there was light duty work available that fit within the plaintiff's restrictions during the summer or fall of 2006. Additionally, paragraph twenty-one of the plaintiff's affidavit, on which she relies, does not state, as the plaintiff argues on appeal, that "there were two other machines that she regularly operated that fit

her light duty requirements, specifically the FPF machine and the [r]igid [l]ine, both of which were functioning and in use from June through December of 2006." Rather, her affidavit specifically states: "Other than running the Titan machine, I felt at the time that there were other machines that, with reasonable accommodation, I could work on including the FPF machine, the [r]igid [l]ine and casting, all of which were operating and in use from June of 2006 to December of 2006." That factual assertion set forth in her affidavit neither avers that those machines fit within her light duty restrictions nor that those machines were available to be assigned to her between June and December, 2006.

We conclude, therefore, that the defendant produced evidence of a legitimate nondiscriminatory reason to deny light duty work to the plaintiff during the summer and fall of 2006, namely, there was no such work available that fit within the plaintiff's restrictions, and the plaintiff failed to produce evidence that could persuade a rational fact finder that the defendant's proffered explanation was unworthy of credence or was pretextual. See *Hammond* v. *Bridgeport*, supra, 139 Conn. App. 692; *Kopacz* v. *Day Kimball Hospital of Windham County, Inc.*, supra, 64 Conn. App. 268.

3

The plaintiff next claims that the defendant failed to set forth a nondiscriminatory reason for denying her a one year medical leave of absence pursuant to the defendant's company policy after she sustained her injury. She argues that the court failed to apply the proper summary judgment standard when it determined that she had failed to comply with the procedures set forth in the defendant's medical leave policy. She argues that the defendant did not put forth this contention as the nondiscriminatory reason for denying medical leave to the plaintiff but, instead, the court "created its own

nondiscriminatory reason for [the defendant's] adverse employment action and in so doing misconceived its function in considering the motion for summary judgment by weighing the evidence and making findings outside the record." Employing our plenary review, we are not persuaded that summary judgment was inappropriate as to this claim.

The plaintiff alleged in her complaint that the defendant "did not choose to offer the plaintiff a medical leave of absence and instead offered . . ." her leave under the Family Medical Leave Act. For purposes of its summary judgment motion, the defendant conceded that the plaintiff had met her initial burden of presenting evidence that would give rise to an inference of unlawful discrimination. See *Hammond* v. *Bridgeport*, supra, 139 Conn. App. 692. The burden then shifted to the defendant to produce a legitimate, nondiscriminatory reason for its actions. Id. In its motion for summary judgment, the defendant argued that the plaintiff was not entitled to a medical leave of absence pursuant to its company policy because, if she was injured in the workplace, she was covered by the defendant's workers' compensation insurance, and that, other than leave under the Family Medical Leave Act, there was no other leave available to her. With its motion for summary judgment, the defendant submitted a copy of page fifty of its employee-owner handbook, which provided in relevant part that disability pay is available to employees but that "[w]ork related accidents do not apply since they are covered under our workers' compensation insurance program." Casey also attested that "[a]lthough [the defendant] does have short-term and long-term disability leaves, the terms of those leaves limit eligibility to employees who have sustained injuries outside of the workplace or have medical conditions unrelated to their work duties." Although the trial court did not state specifically that the defendant had met its burden

of production, employing our plenary review, we conclude that, with the submission of this evidence, the defendant produced a legitimate nondiscriminatory reason for not offering medical leave to the plaintiff, that reason being that if she were injured at work, as she was claiming before the workers' compensation commission, she was not eligible for medical leave pursuant to the defendant's medical leave policy.

After the defendant met its burden of production, "the factual inquiry proceed[ed] to a new level of specificity," requiring the plaintiff to "satisfy [the] burden of persuading the factfinder that [the plaintiff] was the victim of discrimination either directly by persuading the court . . . that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Internal quotation marks omitted.) Id.

In opposition to the defendant's motion for summary judgment, the plaintiff submitted her own affidavit in which she attested in relevant part that she "was eligible and entitled to a one year medical leave of absence from May 12, 2006, to May 12, 2007, in light of the fact that [she] had medical problems keeping [her] from performing regular duty work," but that the defendant did not offer it to her.[6] The plaintiff also submitted portions of the employee-owner handbook, which provided in relevant part: "A medical leave of absence will be granted for a condition which results in absence of more than one week from work. You must submit a written request for such leave along with a statement from your attending physician at least every two months

---

[6] The plaintiff frequently vacillated, both before the trial court and on appeal, between claiming that the defendant did not choose to offer her its medical leave of absence and claiming that the defendant denied her a medical leave of absence. For purposes of our analysis, we view these allegations similarly.

indicating the continuing need for such leave. The maximum duration of a medical leave will be the less of [twelve] months or your length of service with [the defendant]. During the duration of the medical leave, the [defendant] will maintain your health and life insurance plans at the same level as if you were active; [h]owever, you are responsible to reimburse the company for health deductions during your absence. Vacation time is not earned during medical leaves after [sixty] days. Owner's [b]onus is not paid for the first months of work. Employee-owners on medical leave will collect weekly [s]*hort* [t]*erm* [d]*isability* benefits in accordance with our plan. After six months of continuous medical leave, employee-owners may be eligible for [l]*ong* [t]*erm* [d]*isability* benefits." (Emphasis in original.)

During oral argument on the motion for summary judgment before the trial court, the plaintiff's counsel asserted that, although the plaintiff arguably may not have been eligible for medical leave pursuant to its company policy if she were successful in her workers' compensation case, because the defendant was contesting her workers' compensation claim, she was eligible for such medical leave while her case was pending, but the defendant terminated her employment "prior to [her] ability to even apply for a medical leave of absence." The court then asked the plaintiff's counsel what prohibited the plaintiff from applying for medical leave in the spring or summer of 2006, when she applied for workers' compensation benefits and the defendant contested her claim, to which counsel responded that the plaintiff did not realize that the defendant was going to terminate her employment at that time.[7]

---

[7] Specifically, the court asked counsel why the plaintiff could not apply for medical leave while she was an employee of the defendant, before her employment was terminated on August 31, 2006. Counsel responded: "She didn't know at the time that they were intending on—on terminating her [employment]. The way things were going at the way they were going was that she was going through her normal process as she had always done.

As to this claim of discrimination, the court held that the plaintiff failed to produce any evidence that she ever requested or applied for medical leave as is required under the plain language of the defendant's policy. Accordingly, the court held that the defendant had not denied the plaintiff a medical leave, as she never applied for such leave. The plaintiff argues on appeal that the court's decision was improper because the defendant conceded that she had met her initial burden and the burden then shifted to the defendant to produce a nondiscriminatory reason for its action, and the defendant had not asserted that the plaintiff had not applied for a medical leave as a reason for its action.

As stated previously, the defendant produced as its nondiscriminatory reason for not offering a medical leave of absence to the plaintiff that she was claiming that her injuries were work-related and that employees who suffer work-related injuries are covered by the defendant's workers' compensation insurance and are not eligible for a medical leave of absence, and that no other leave was available for the plaintiff. The plaintiff then had the burden of providing evidence that could persuade a rational fact finder that the defendant's proffered reason was pretextual. Although it does not appear that the court examined the plaintiff's evidence in light of the defendant's stated nondiscriminatory reason, namely that the leave was not available to the plaintiff under the defendant's policy, the court, nonetheless, found there was no pretext to the defendant's not offering a medical leave to the plaintiff because the plaintiff conceded that she never submitted a request for a medical leave as was required under the plain language of the policy.

Medical leave of absence having been an available option to have prevented her from being terminated, she would have grabbed at that opportunity, but that opportunity wasn't afforded to her because by the time she found out what the intent of [the defendant] was, it was already precluded."

To meet her burden of persuasion, the plaintiff was required to submit evidence that, if believed, could persuade a rational fact finder that there was a discriminatory pretext to the defendant's assertion that it did not offer the plaintiff a medical leave of absence because, if she was injured in the workplace, she was covered by the defendant's workers' compensation insurance, and that, other than leave under the Family Medical Leave Act, there was no other leave available for her. Reviewing the record and the briefs of the parties on appeal, we conclude that the plaintiff failed to sustain her burden of producing evidence that could persuade a rational factfinder that the defendant's proffered reason with respect to any medical leave for the plaintiff was pretextual.[8] We conclude that because the plaintiff has

[8] We are mindful that "Connecticut antidiscrimination statutes should be interpreted in accordance with federal antidiscrimination laws. See, e.g., *Jackson* v. *Water Pollution Control Authority*, 278 Conn. 692, 705–709, 900 A.2d 498 (2006) (applying federal antidiscrimination jurisprudence in disability case); *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 102–103, 671 A.2d 349 (1996) (same); *Wroblewski* v. *Lexington Gardens, Inc.*, 188 Conn. 44, 53, 448 A.2d 801 (1982) ('confirm[ing] our legislature's intention "to make the Connecticut [antidiscrimination] statute coextensive with the federal' " law when addressing sex discrimination); *Pik-Kwik Stores, Inc.* v. *Commission on Human Rights & Opportunities*, 170 Conn. 327, 331, 365 A.2d 1210 (1976) (addressing claim of sex discrimination but stating principle of reliance on federal law broadly to apply to all protected classes then enumerated in § 46a-60—race, color, national origin or sex)." *Curry* v. *Allen S. Goodman, Inc.*, 286 Conn. 390, 407–408, 944 A.2d 925 (2008).

In *Perez-Dickson* v. *Bridgeport*, 304 Conn. 483, 515–16, 43 A.3d 69 (2012), a case concerning, inter alia, a claim of racial discrimination in employment, our Supreme Court, applying the burden-shifting analysis set out by the United States Supreme Court in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), discussed what proof was necessary for a plaintiff to raise an inference of intentional discrimination such that it would allow a jury to conclude that the defendant had a discriminatory intent. Although this aspect of the case concerned a motion for directed verdict, rather than a motion for summary judgment, we find the discussion of the law relevant to the present case.

" 'Upon the defendant's articulation of . . . a non-discriminatory reason for the employment action, the presumption of discrimination arising with the establishment of the prima facie case drops from the picture. See [*St.*

conceded that she did not submit a request for a medical leave of absence, as was required by the plain language of the policy that she submitted as evidence, the plaintiff has not met her burden of providing evidence that could

*Mary's Honor Center* v. *Hicks*, 509 U.S. 502, 510–11, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)]; *Fisher* [v. *Vassar College*, 114 F.3d 1332, 1336 (2d Cir. 1997)].' *Weinstock* v. *Columbia University*, 224 F.3d 33, 42 (2d Cir. 2000), cert. denied, 540 U.S. 811, 124 S. Ct. 53, 157 L. Ed. 2d 24 (2003). If the jury disbelieves the nondiscriminatory reason proffered by the employer, the burden is then on the plaintiff to prove by a preponderance of the evidence that the real reason for the disparate treatment was discrimination on the basis of membership in the protected class. *St. Mary's Honor Center* v. *Hicks*, supra, 519 ('[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination' . . .); id., 515 ('a reason cannot be proved to be "a pretext *for discrimination*" unless it is shown *both* that the reason was false, *and* that discrimination was the real reason' . . .); see also *Weinstock* v. *Columbia University*, supra, 42 (if jury disbelieves employer's explanation for disparate treatment, 'the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination'); *Board of Education* v. *Commission on Human Rights & Opportunities*, 266 Conn. 492, 512, 832 A.2d 660 (2003) (when employee established prima facie case of discrimination and fact finder reasonably disbelieved reasons for disparate treatment proffered by employer, sole remaining issue was 'whether the [fact finder] reasonably could have inferred from the evidence before it that the [employer] intentionally discriminated against [the employee] . . .').

"When the employer has rebutted the presumption of discrimination arising from the plaintiff's prima facie case by providing reasons for the disparate treatment, '[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) *may*, together with the elements of the prima facie case, suffice to [satisfy the plaintiff's ultimate burden of proving] intentional discrimination.' . . . *St. Mary's Honor Center* v. *Hicks*, supra, 509 U.S. 511. 'Certainly [however] there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.' " (Emphasis in original.) *Perez-Dickson* v. *Bridgeport*, supra, 304 Conn. 515–16; see also *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, supra, 216 Conn. 53–54 (adopting the *McDonnell Douglas Corp.* burden shifting analysis for § 31-290a claims).

persuade a rational fact finder that the defendant refused her a medical leave of absence for discriminatory reasons. In fact, the record is clear that the plaintiff did not request a medical leave pursuant to the defendant's company policy, and, therefore, the defendant did not deny any request by the plaintiff for such a leave since she had not requested it. Thus, there are no genuine issues of material fact as to this issue. See generally *Perez-Dickson* v. *Bridgeport*, 304 Conn. 483, 515–16, 43 A.3d 69 (2012).

4

The plaintiff claims that the defendant failed to establish a nondiscriminatory reason for denying her short or long-term disability benefits, and that there are disputed material facts related to this claim. As with the plaintiff's claim regarding medical leave, the defendant again asserted before the trial court that the plaintiff was not eligible for these benefits because she was claiming a work related injury and had applied for workers' compensation benefits. In her memorandum in opposition to the defendant's motion for summary judgment, the plaintiff's argument consisted of the following: "[The plaintiff] was deprived [of] the right of being able to apply for short-term and/or long-term disability while her workers' compensation claims were being contested. In [the defendant's] memorandum of law, it admits that it has short-term and long-term disability leaves; however, it suggests that [the plaintiff] was not eligible for those disability leaves because her injuries were work related. However, this argument fails to pass muster because at the time that [the defendant] decided to terminate [the employment of the plaintiff], [the defendant] was adamantly contesting the compensability of her injuries. From May 12, 2006, to July 25, 2006, [the plaintiff] should have been eligible for short-term

disability benefits.[9] . . . The mere prosecution of a claim for workers' compensation benefits differs markedly from an employer's actual acceptance of the employee's workers' compensation claim and in turn, the employees' actual receipt of workers' compensation benefits. [The plaintiff] did not receive any workers' compensation benefits from May 12, 2006, to July 25, 2006. She should have been provided short term disability benefits, which workers' compensation could have reimbursed short term disability for once [the defendant] began paying out benefits." (Citation omitted.)

The court again held that the plaintiff had failed to meet her burden of producing evidence that could persuade a rational fact finder that the defendant's stated reason for not providing disability benefits to the plaintiff was pretextual because the plaintiff conceded that she had not applied for such benefits. See generally *Perez-Dickson* v. *Bridgeport*, supra, 304 Conn. 515–16. For the reasons fully set forth in part II B 3 of this opinion, we conclude that the granting of summary judgment also was appropriate on this claim.

5

The plaintiff next claims that the defendant failed to establish a nondiscriminatory reason for its decision "to exclude the plaintiff from its early retirement program," and that there are disputed material facts related to this claim. She argues that the court improperly concluded that it did not have to rely on evidence to make a commonsense ruling that the defendant had a legitimate business reason for not lowering the retirement age of its early retirement program to include the plaintiff. She contends that the court "usurped the defendant's evidentiary burden and fabricated an independently constructed nondiscriminatory reason based on its own

---

[9] We note that the plaintiff's employment was terminated on August 31, 2006.

'common sense conclusions.' " The defendant responds that summary judgment was appropriate on this claim because the plaintiff "presented no evidence [that] would support a jury's finding that [the defendant] set the early retirement age at [fifty-three] purposely to exclude her . . . ." Employing our plenary review, we conclude that summary judgment was appropriate on this claim.

In her complaint, the plaintiff alleged that the defendant voluntarily chose not to offer the plaintiff the opportunity to participate in its early retirement program. The defendant advanced as its nondiscriminatory reason for not lowering the retirement age of its early retirement program further that "[a]s part of the business restructuring, [the defendant] made the business decision to offer the early retirement package to employees who were at least [fifty-three] years of age. This business decision did not single out [the p]laintiff or discriminate against her; other employees were also ineligible because they had not attained [fifty-three] years of age. At [forty-four] years old, [the p]laintiff was [nine] years below the eligibility threshold and there were at least [seventeen] other employees who also were ineligible because of their age." The defendant also argued that if it "had included all of the employees who were at least [forty-four] years of age as suggested by [the p]laintiff, [it] would have had to offer the early retirement benefit to an additional [thirteen] employees, including [the p]laintiff . . . [and it] would have faced the prospect of paying out additional money, enduring the loss of so many skilled employees, and having to recruit and pay employees to fill any necessary positions." The Casey affidavit attested to these facts.

To rebut the defendant's nondiscriminatory reason for not lowering the age further to include the plaintiff in its early retirement program, the plaintiff submitted a business record of the defendant that she alleges

directly refuted the defendant's evidence "as it clearly set forth the ages of all the . . . employees who were impacted by the 2006 internal changes and specifically identified which individuals, by their ages, were eligible for the program."[10] She argues that the "document unequivocally shows that aside from the plaintiff, there was only one individual who was above the age of [forty-four] years but below [the age of fifty-three] years. . . . Thus, according to the chart created and distributed by [the defendant], had [the defendant] offered its program to the plaintiff, it would only have had to offer this benefit to one additional employee, and not thirteen like . . . Casey averred." Therefore, she argues, she successfully refuted the defendant's explanation. We are not persuaded.

The plaintiff acknowledges that under the defendant's retirement program, an employee needed to have at least ten years of service and be fifty-five years old. It also is uncontested that pursuant to the defendant's restructuring in 2006, it offered an early retirement package to employees who were close to the official retirement age by lowering the age of eligibility to fifty-three years, with at least ten years of service. The plaintiff claimed that the defendant did not lower the age of eligibility to forty-four specifically in retaliation for her having filed a claim for workers' compensation benefits. The defendant proffered a legitimate nondiscriminatory reason that it would have been costly to lower the retirement age to forty-four because thirteen additional employees then would have been eligible to retire.

To rebut this legitimate nondiscriminatory reason, the plaintiff submitted a chart that had been prepared by the defendant, which contained three columns. See footnote 4 of this opinion. The heading of column one

---

[10] See chart at footnote 4 of this opinion.

states: "Job Titles of those Eligible for Early Retirement." Column one then lists eight different job titles. The heading of column two states: "Ages of those eligible for Early Retirement. Must be [fifty-three] years of age by: December 31, 2006." Column two then contains the ages of ten individuals, which range from fifty-three years of age to sixty-three years of age. The heading of column three states: "Ages of those in the position not eligible for early retirement as of December 31, 2006." Column three then contains the ages of seventeen individuals, ranging in age from twenty-two to forty-nine, with only one individual's age being over forty-four. The plaintiff argues, as she did before the trial court, that this clearly refutes the Casey averment that the defendant would have had to offer early retirement to thirteen additional employees if it had lowered the age to forty-four in order to include the plaintiff in the program. We, like the trial court, do not agree with this speculation.

The chart that the plaintiff produced lists eight different job titles, titles of those employees *who are eligible* for the early retirement program. The chart contains no listing of job titles where no one holding that title is eligible for the early retirement program, and, although the chart has a column that lists "[a]ges of those in the position not eligible for early retirement as of December 31, 2006," it lists only those positions where there are employees who are eligible to participate in the program. The plaintiff did not produce any evidence that explained this chart or whether there were additional employees, as the defendant had argued before the trial court, who were not listed on this chart. Furthermore, although the plaintiff deposed Casey, she conceded to the trial court that she never inquired about what she refers to as the discrepancy between Casey's averment and the chart.

The plaintiff's mere allegation that this chart amounted to what she essentially claims is a smoking gun did not rise to the level necessary to satisfy her burden of producing evidence that could persuade a rational fact finder that the defendant's reason for not lowering the retirement age to include the plaintiff was pretextual. Employing our plenary review, therefore, we are unable to conclude that this chart raises a genuine issue of material fact as to whether the defendant's proffered reason was pretextual or unworthy of credence. Accordingly, the court properly rendered summary judgment on this claim.

6

The plaintiff also claims that the defendant failed to establish a nondiscriminatory reason for offering her a severance package that was intentionally deceptive and lesser than that of other employees. She argues that the court improperly bypassed the defendant's need to produce a nondiscriminatory reason for its action and "baldly conclude[d] that the plaintiff failed to put [the defendant's] intent into dispute by presenting no evidence that the severance package offered to her differed from the severance packages offered to other employees, or evidence showing that those employees were required, as a condition of receiving their severance benefits to sign a similar waiver." The plaintiff does not argue that the court's conclusion that she failed to present any evidence was incorrect, she alleges only that the court improperly failed to consider whether the defendant met its intermediate burden of producing a legitimate nondiscriminatory reason for its action.

In its motion for summary judgment, the defendant argued that there was no dispute that the defendant had offered a severance package to the plaintiff, and any problems in its initial severance offer to the plaintiff

were cured when the plaintiff through her attorney rene-
gotiated the proposal and requested an amendment. In
her affidavit attached to the defendant's motion for
summary judgment, Casey averred that there were
attached to her affidavit "copies of the [s]eparation
[a]greements that were the subject of negotiation
between [the p]laintiff's counsel and [the defendant],
including modified versions revised by the [the p]lain-
tiff's counsel and [the defendant's] counsel . . . [but
that the p]laintiff did not accept the revised separation
package offered by [the defendant]." In response to the
defendant's motion, the plaintiff filed an objection in
which she argued that there was a genuine issue of
material fact as to whether the defendant "retaliated
against [her] by denying her severance benefits. The
severance benefits offered to [the plaintiff] in the sever-
ance agreement was part of the standard options [that
the defendant] promised or owed to all employees
impacted by its internal changes. Requiring [the plain-
tiff] to relinquish her claim under . . . § 31-290a in
order to receive those benefits therefore constitutes
retaliation. Thus summary judgment should be denied."

As to this claim of discrimination and the arguments
and evidence submitted thereon in support of and in
opposition to the defendant's motion for summary judg-
ment, the court specifically held: "The evidence is undis-
puted that [the plaintiff] was offered a severance
package, and that she was required to sign a thorough-
going waiver of all claims she might make against [the
defendant]. This waiver was sufficiently broad to
include claims of retaliatory treatment under § 31-290a
(a). What [the plaintiff] has failed to provide is any
evidence that the severance package she was offered
differed from the severance packages offered to other
employees, or whether those employees were required,
as a condition of receiving their severance benefits, to
sign a similar waiver. Therefore, there is no evidence

in the record from which a fact finder could rationally conclude that [the plaintiff] was treated differently from other employees, let alone unlawfully discriminated against." The court also explained that the plaintiff had been "represented by counsel throughout her severance negotiations with [the defendant]. For this reason and because the release clause was so broad in nature that there could be no mistake that it waived any claims under § 31-290a (a), her claim that [the defendant] tried to 'trick' her into giving up her right to bring such a claim borders on the fanciful." The plaintiff claims that the court improperly bypassed the defendant's burden of production that there was a nondiscriminatory reason for its actions. We disagree.

The defendant asserted through the Casey affidavit and its attachments that the plaintiff's attorney and the defendant had entered into negotiations regarding the plaintiff's severance package. The defendant, therefore, had produced a legitimate nondiscriminatory reason for its actions surrounding the severance package—the plaintiff through her attorney and the defendant were negotiating a severance package. The burden then shifted back to the plaintiff to produce evidence to support her discrimination contention; see generally *Perez-Dickson* v. *Bridgeport,* supra, 304 Conn. 515–16; and she failed to produce any evidence to this effect and does not argue otherwise on appeal.

The judgment is affirmed.

In this opinion the other judges concurred.